## UNITED STATES, EX REL. KENNEDY ET AL. v. TYLER, SHERIFF, ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF NEW YORK.

No. 125.   Argued April 21, 22, 1925.—Decided October 12, 1925.

1. The power of a District Court to inquire by *habeas corpus* into the cause of the detention of a person held in custody by the authority of a state court in alleged violation of the Constitution, laws or treaties of the United States, is to be exerted in the exercise of a sound discretion; and the due and orderly administration of justice in a state court is not to be thus interfered with save in rare cases where exceptional circumstances of peculiar urgency are shown to exist.   P. 17.

2. Lack of ability to bear the expense of proceedings for relators' protection in the state courts or to furnish bonds required on appeal, does not alter this rule.   P. 19.

3. Persons who were imprisoned by a New York court for contempt in disobeying its order prohibiting further proceedings in the Peacemakers' Court of the Cattaraugus Indian Reservation, claimed that the land in question was outside the sovereignty of the State and the jurisdiction of its courts, and that their arrest and detention violated their rights as Seneca Indians, under treaties with the Seneca Nation, and their rights under the Federal Constitution. *Held*, inasmuch as the state courts were proceeding under state laws passed in response to a request of the Seneca Nation and which apparently for the greater part of a century had not been challenged as impeding the authority of the Federal Government, that it was peculiarly appropriate that the questions raised should be dealt with by those courts in the first instance, subject to review by this Court, and that a writ of *habeas corpus,* issued by the District Court, should have been discharged upon that ground rather than upon the merits.

294 Fed. 111, affirmed.

APPEAL from a judgment of the District Court, discharging upon the merits a writ of *habeas corpus,* issuance of which was procured by Walter S. Kennedy, on behalf of his son, Warren Kennedy and Sylvester J. Pierce, to

test the validity of their arrest and imprisonment for contempt of a prohibitory order of the Supreme Court of New York. The United States and Alice Estella Spring intervened in the District Court and joined in the appeal. William F. Waldow, then Sheriff of Erie County, was named defendant; upon the expiration of his term, Frank M. Tyler, his successor, was substituted.

*Mr. George P. Decker,* for appellants, Kennedy and Pierce.

*Mr. Edward G. Griffin,* Deputy Attorney General of New York, with whom *Mr. Albert Ottinger,* Attorney General of New York, was on the brief, for Tyler, Sheriff.

*Mr. W. W. Dyar,* Special Assistant to the Attorney General, with whom *Solicitor General Beck* and *Assistant Attorney General Wells,* were on the brief, for the United States.

*Mr. Edward G. Griffin,* with whom *Mr. Thomas H. Larkin* and *Alice Estella Spring, pro se,* were on the brief, for appellee Alice Estella Spring.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

Nathaniel C. Patterson, a duly enrolled Seneca Indian residing on the Cattaraugus Indian Reservation in the State of New York, died testate leaving a widow (a white woman), a daughter and three sons. The widow was named in the will as sole executrix. The will was regularly admitted to probate by the surrogate of Erie County, New York, and letters of administration granted. The widow thereupon presented her letters of administration together with the will to the peacemakers' court of the Cattaraugus Reservation, where the deceased had left real property, asking that the probate of the will be recognized or the

will itself be admitted there to probate. The peacemakers'
court, holding that the widow and her children were not
members of the Seneca Nation and, therefore, under tribal
custom, not entitled to inherit lands in the reservation,
declined to grant either prayer, but appointed Pierce ad-
ministrator. Pierce brought an action in the peacemakers'
court to eject the widow from the property and to set
aside the probate of the will by the surrogate of Erie
County. The widow appeared specially and objected to
the jurisdiction of the peacemakers' court. That court
overruled the objection and entered judgment against her
for possession of the property. Upon the application of
the widow, the supreme court of the state issued its final
order prohibiting Pierce, administrator, and the members
of the peacemakers' court from taking any further steps
in the matter. In violation of that order, Pierce caused a
mandate of the peacemakers' court to be issued and de-
livered to Warren Kennedy, marshal of the reservation,
under which the latter took possession of the property.
Thereupon, contempt proceedings were had before the
state supreme court, as a result of which Pierce and Ken-
nedy were adjudged guilty of a contempt of that court in
having wilfully disobeyed its prohibition order and sen-
tenced to pay a fine in the sum of $184.50 with imprison-
ment as the alternative. Upon their failure to pay the
fine, Pierce and Kennedy were ordered committed to the
Erie County jail and to that end were taken into custody
by the sheriff of Erie County. A writ of *habeas corpus*
was immediately sought in the federal district court for
the western district of New York upon the grounds that
Pierce and Kennedy were Seneca Indians and their deten-
tion was in violation of their rights under treaties with the
Seneca Nation; that both the Indians and the lands in
question were outside the sovereignty of the state and,
consequently, of the jurisdiction of its courts; and that
by their arrest and detention they were denied the due

process of law guaranteed by the Fifth Amendment to the Constitution of the United States. The writ was sued out by the relator Walter S. Kennedy father of Warren.

The district court exercised its discretion in favor of issuing the writ principally upon the ground that Pierce and Warren Kennedy being Seneca Indians were wards of the Nation and entitled to the protection of the federal courts. But in deciding the case upon the merits, that court pointed out that as early as 1849 the State of New York, at the earnest request of the Indians themselves, had assumed jurisdiction over them and their lands and possessions within the state; that to that end state laws had been enacted for their civil government and the regulation of their internal affairs; that the peacemakers' courts on the several reservations were created by state law; and that the courts of the state had uniformly held that the power of the state in respect of these matters had never been doubted or questioned, and such sovereignty as the Indians may have formerly possessed had been merged and lost in the sovereignty of the state under which they must look for protection of life and property. In the absence of congressional action, the district court concluded that these state laws and decisions, by long acquiescence on the part of the Indians, had become rules of property within the state and were controlling. The writ was accordingly dismissed. *United States* v. *Waldow,* 294 Fed. 111.

We are asked to enter upon a review of these matters and of the historical relations of the Indians to the Nation and to the State of New York from a time long anterior to the adoption of the federal Constitution. The conclusion we have reached makes this unnecessary. It is enough for present purposes to say that the State of New York, as early as 1849, at the request of the Indians, assumed governmental control of them and their property, passed laws creating and defining the jurisdiction of the

peacemakers' courts, administered these laws through its courts, and that Congress has never undertaken to interfere with this situation or to assume control. Whether the state judicial power extends to controversies in respect of the succession of Indian lands within the boundaries of the state, whether the peacemakers' court in the exercise of its jurisdiction is subject to the authority of the state supreme court, whether the subject matter of these controversies and proceedings was one exclusively within the control of the national government and beyond the authority of the state, are all questions which, under the circumstances recited, it is peculiarly appropriate should in the first instance be left to be dealt with by the courts of the state. In so far as they involve treaty or constitutional rights, those courts are as competent as the federal courts to decide them. In the regular and ordinary course of procedure, the power of the highest state court in respect of such questions should first be exhausted. When that has been done, the authority of this court may be invoked to protect a party against any adverse decision involving a denial of a federal right properly asserted by him.

The rule has been firmly established by repeated decisions of this court that the power conferred on a federal court to issue a writ of *habeas corpus* to inquire into the cause of the detention of any person asserting that he is being held in custody by the authority of a state court in violation of the Constitution, laws or treaties of the United States, is not unqualified, but is to be exerted in the exercise of a sound discretion. The due and orderly administration of justice in a state court is not to be thus interfered with save in rare cases where exceptional circumstances of peculiar urgency are shown to exist. *Ex parte Royall,* 117 U. S. 241, 250–253; *In re Wood,* 140 U. S. 278, 289; *In re Frederich,* 149 U. S. 70, 77–78; *New*

*York* v. *Eno,* 155 U. S. 89, 98; *Whitten* v. *Tomlinson,* 160 U. S. 231, 240–242; *Baker* v. *Grice,* 169 U. S. 284, 290; *Tinsley* v. *Anderson,* 171 U. S. 101, 104–105; *Davis* v. *Burke,* 179 U. S. 399, 401–403; *Riggins* v. *United States,* 199 U. S. 547, 549; *Drury* v. *Lewis,* 200 U. S. 1, 6; *Glasgow* v. *Moyer,* 225 U. S. 420, 428; *Johnson* v. *Hoy,* 227 U. S. 245, 247.

In *New York* v. *Eno, supra,* a federal circuit court had discharged a prisoner held by virtue of the judgment of a state court on the ground that the offenses for which he was indicted were exclusively cognizable under the authority of the United States. This court reversed the judgment, holding that the state court of original jurisdiction was competent to decide the questions in the first instance and that "its obligation to render such decision as will give full effect to the supreme law of the land and protect any right secured by it to the accused is the same that rests upon the courts of the United States. When the claim of the accused of immunity from prosecution in a state court for the offences charged against him has been passed upon by the highest court of New York in which it can be determined, he may then, if the final judgment of that court be adverse to him, invoke the jurisdiction of this court for his protection in respect of any federal right distinctly asserted by him, but which may be denied by such judgment."

This general rule is emphasized by a consideration of the few cases where this court has upheld the allowance of the writ. They were all cases of exceptional urgency. Such, for example, were *In re Neagle,* 135 U. S. 1, where a deputy marshal of the United States was discharged on *habeas corpus* from state custody on a charge of homicide committed in the performance of his duty to guard and protect a justice of this court; *In re Loney,* 134 U. S. 372, where petitioner, charged with perjury in testimony given in a contested congressional election case, was discharged

upon the ground that to permit him to be prosecuted in the state courts would greatly impede and embarrass the administration of justice in a national tribunal; and *Wildenhus's case,* 120 U. S. 1, where a member of the crew of a foreign merchant vessel was discharged from the custody of the state because the arrest was contrary to the provisions of an international treaty. Thus, it will be seen, two of these cases involved interferences by the state authorities with the operations of departments of the general government, and the other concerned the delicate relations of that government with a foreign nation.

It is hardly necessary to say that this case presents no such exceptional and imperative circumstances. The state courts proceeded under laws passed in response to the request of the Indian Nation of which contemners are members,—laws which apparently for the greater part of a century had not been seriously challenged as impeding the authority of the federal government. Under these conditions, contemners, deliberately having taken the risk of setting at defiance the judgment of the state court, must look for redress, if they are entitled to any, to the appropriate and authorized appellate remedies. They are not entitled to relief in a federal court by the writ of *habeas corpus.*

Something is said in the opinion of the court below to the effect that the relators pleaded lack of ability to bear the expense of proceedings for their protection in the state courts or to furnish bonds required on appeal. We are unable to find anything in the record to support this claim, but even if it were true it would afford no basis for a different conclusion. *Markuson* v. *Boucher,* 175 U. S. 184, 185, 187.

The court below should have discharged the writ upon the foregoing grounds rather than upon the merits, but the result being the same, the judgment is

*Affirmed.*