**UNITED STATES, In Behalf of TULEE, v. HOUSE, Sheriff.**

**No. 9340.**

Circuit Court of Appeals, Ninth Circuit.

April 3, 1940.

Sam M. Driver, U. S. Atty., and Lyle Keith, Asst. U. S. Atty., both of Spokane, Wash., and Kenneth R. L. Simmons, Dist. Counsel, Department of Interior, of Billings, Mont., for appellant.

G. W. Hamilton, Atty. Gen., State of Washington, T. H. Little, Asst. Atty. Gen., State of Washington, and Edgar H. Canfield, Pros. Atty., of Goldendale, Wash., for appellee.

Before HANEY, STEPHENS, and HEALY, Circuit Judges.

HANEY, Circuit Judge.

Sampson Tulee, a Yakima Indian, was arrested, upon an information being filed in a state court in Klickitat County, Washington, and the petition before us seeks his release from the custody of the sheriff of that county.

On May 16, 1939, Tulee was charged in an information with having caught a salmon, a food fish, on May 6, 1939, with a dip bag net, and selling the same commercially, without having first obtained a license to do so, as required by 7 Rem.Rev. Stat. of Wash. § 5693. A warrant of arrest was issued, and Tulee was taken into custody by appellee.

The petition herein, after alleging such facts, alleged that Tulee was illegally restrained of his liberty because the Washington statute under which he was detained was unconstitutional and void. The statute was alleged to be void because it violated paragraph 2 of Article 3 of the Yakima Treaty of June 9, 1855 (12 Stat. 951) which provides in part: "The exclusive right of taking fish in all the streams, where running through or bordering said reservation, is further secured to said confederated tribes and bands of Indians, as also the right of taking fish at all usual and accustomed places, in common with citizens of the Territory, and of erecting temporary buildings for curing them; * * *." The petition admits that Tulee did in fact commit the acts described in the information. While the petition does not allege that the

place where the fish were caught was on the Yakima Indian Reservation,[1] it does allege that such place "was and is one of the usual and accustomed fishing places of the Yakima tribe of Indians".

The petition also alleges: "That the salmon fishing season opened on the Columbia River approximately May 1, 1939. That several hundred members of the Yakima tribe of Indians are now fishing in said river, deriving their living from salmon fish taken from said river within the State of Washington. That the majority of said Indian fishermen, including Sampson Tulee, the ward of your petitioner, have refused to pay license fees to agents of the State of Washington, contending the State of Washington has no right to charge said Indians license fees or restrict their fishing operations on the Columbia River in any manner; and that a serious emergency now exists." It was further alleged that "no relief is available to members of the Yakima tribe of Indians or to Sampson Tulee, the ward of your petitioner in the courts of the State of Washington".

The court below issued an order directing appellee to appear and show cause why the writ should not issue. Appellee filed a demurrer, on the ground that "the petition does not state any grounds sufficient to authorize the issuance of a writ of habeas corpus". The trial court found that the pleadings "directly raise the question of whether or not the detention of Sampson Tulee, a Yakima Indian, by said sheriff under a statute of the State of Washington (Rem.Rev.Stat. Section 5703) violates his rights under the Yakima Indian treaty of June 9, 1855 (12 Stat. 951), and the Constitution of the United States and indirectly involves the treaty rights of all the other members of the Yakima Indian Tribe; and that because of the existence of exceptional circumstances of an emergency character, as stated in said petition, the case is a proper one * * * for assumption and exercise of jurisdiction on the merits by" the court below.

The court below held that the right secured to the Indians by the treaty "is subject to the paramount and superior right of the state, under the exercise of its sovereign police powers, to reasonably regulate the taking of salmon and other fish from waters within its jurisdiction" and that the state statute in question "is a proper and reasonable exercise by said state of such police powers". This appeal is taken from the order denying the petition.

Notwithstanding the desire of both parties for a decision on the merits, we believe the rule to be applied is the one stated in Mooney v. Holohan, 294 U.S. 103, 115, 55 S.Ct. 340, 343, 79 L.Ed. 791, 98 A.L.R. 406, that: "Orderly procedure, governed by principles we have repeatedly announced, requires that before this Court is asked to issue a writ of habeas corpus, in the case of a person held under a state commitment, recourse should be had to whatever judicial remedy afforded by the state may still remain open." This court has repeatedly invoked that rule with respect to petitioners held under the commitment of state courts. Hall v. People of State of California, 9 Cir., 79 F.2d 132; Phillips v. McCauley, 9 Cir., 92 F.2d 790, 791; Milliken v. McCauley, 9 Cir., 93 F.2d 645; Palmer v. McCauley, 9 Cir., 103 F.2d 300; Frach v. Mass, 9 Cir., 106 F.2d 820, 821. We think appellant should be accorded the same nondiscriminatory treatment heretofore accorded other petitioners, and is not entitled to special privilege or dispensation, because:

First. Although it is alleged in the petition that "no relief is available to members of the Yakima tribe of Indians or to Sampson Tulee, the ward of your petitioner, in the courts of the State of Washington", surely such an allegation is not binding on us when we know it to be false. The petition merely shows that an information was filed and that Tulee was arrested. It does not appear that Tulee has been tried; or if tried that he has been convicted; or if convicted, that he has appealed to the Supreme Court of Washington; or if he has appealed, that the judgment was affirmed; or, if the judgment was affirmed, that he has sought review in the Supreme Court of the United States. From the allegations of the petition, and it is conceded by the parties, it is apparent that the remedy outlined is still available to appellant. Furthermore, the Washington statutes relating to habeas corpus (3 Rem. Rev.St. of Wash. §§ 1063–1085) may afford appellant another remedy.

It is apparent that appellant's remedy is in the state courts. What he actually means by his allegation, quoted above,

---

[1] The parties concede that such place was not on the reservation.

is that he believes that he cannot get a favorable decision in the state courts, because of previous construction of the treaty by the Supreme Court of Washington. Whether such court properly construed the treaty is of no moment here, because a writ of habeas corpus may not be used as an anticipatory appeal. Rumely v. McCarthy, 250 U.S. 283, 288, 289, 39 S.Ct. 483, 63 L.Ed. 983; Henry v. Henket, 235 U.S. 219, 228, 229, 35 S.Ct. 54, 59 L.Ed. 203.

Second. Appellant concedes that he is not entitled to special dispensation merely because the United States appears in the proceeding. See United States ex rel. v. Tyler, 269 U.S. 13, 46 S.Ct. 1, 70 L.Ed. 138.

■ Third. Appellant contends that the *instant case falls within the exception to* the general rule stated and applied in Mooney v. Holohan, supra. The exception is stated in Urquhart v. Brown, 205 U.S. 179, 182, 27 S.Ct. 459, 460, 51 L.Ed. 760, as follows: " * * * The exceptional cases in which a Federal court or judge may sometimes appropriately interfere by habeas corpus in advance of final action by the authorities of the state are those of great urgency, that require to be promptly disposed of; such, for instance, as cases 'involving the authority and operations of the general government, or the obligations of this country to, or its relations with, foreign nations.' * * *" In Urquhart v. Brown, supra, in which this exception was stated, and in which the Supreme Court applied the general rule, the appeal was taken from the Circuit Court of the United States for the Western District of Washington.

■ Since a demurrer was filed to the petition, only the facts stated in the petition, and those of which we may take judicial notice are before us. The only allegations bearing on the question are: " * * * That several hundred members of the Yakima tribe of Indians are now fishing in said river, deriving their living from salmon fish taken from said river within the State of Washington. That the majority of said Indian fishermen, including Sampson Tulee, the ward of your petitioner, have refused to pay license fees to agents of the State of Washington, contending the State of Washington has no right to charge said Indians license fees or restrict their fishing operations on the

Columbia River in any manner; and that a serious emergency now exists."

It is obvious that neither the "authority" or "operations" of the United States is involved. Appellee does not challenge any authority of the United States, or any action thereof, in any manner. The thing challenged is the authority of the state, not of the United States. As said in United States, ex rel., v. Tyler, supra, 269 U.S. 17, 46 S.Ct. 2, 70 L.Ed. 138, that insofar as the questions raised "involve treaty or constitutional rights" the state courts "are as competent as the federal courts to decide them" and: " * * * In the regular and ordinary course of procedure, the power of the highest state court in respect of such questions should first be exhausted. When that has been done, the authority of this court may be invoked to protect a party against any adverse decision involving a denial of a federal right properly asserted by him."

It is likewise clear that no operation of the United States is involved. What is in question is the action of an Indian and a state. No officer of the United States is restrained from carrying out his duties, as was the case in Ohio v. Thomas, 173 U.S. 276, 19 S.Ct. 453, 43 L.Ed. 699, and Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846.

■ The obligations or relations of the United States with a "foreign nation" are not here involved because Indian tribes "are not foreign nations". Jones v. Meehan, 175 U.S. 1, 10, 20 S.Ct. 1, 5, 44 L.Ed. 49. "The North American Indians do not, and never have, constituted 'nations' as that word is used by writers upon international law, although in a great number of treaties they are designated as 'nations' as well as tribes." Montoya v. United States, 180 U.S. 261, 265, 21 S.Ct. 358, 45 L.Ed. 521.

■ Appellant relies on In re Race Horse, C.C.Wyo., 70 F. 598, 604, and Ward v. Race Horse, 163 U.S. 504, 505, 16 S.Ct. 1076, 41 L.Ed. 244. The question there presented was whether the court had jurisdiction at all. Here, unquestionably the court below had jurisdiction. 28 U.S.C.A. § 453. The question is not whether jurisdiction existed, but the propriety of its exercise.

■ The bare allegation in the petition "that a serious emergency now exists" does

not aid appellant. No facts are alleged showing what such "serious emergency" is. Imprisonment of any human being is a "serious emergency" to the prisoner, but that clearly is insufficient. Such allegation is a conclusion of law, and if we accept it here, logic compels us to accept it in the numerous cases presented to us by petitioners held under commitments of the states in this circuit. In Hall v. People of State of California, 9 Cir., supra, petitioner alleged that he was imprisoned in violation of the Constitution and laws of the United States "and unless a writ of habeas corpus issue forthwith the judgment of conviction and sentence to the penalty of death will be carried out * * * to the irremediable damage and loss of life of this petitioner". It is difficult to conceive of a more serious emergency than was presented in that case, yet it was insufficient to bring the exception into operation. We believe the bare allegation of a "serious emergency" is wholly insufficient here, for by merely inserting a like bare allegation in his petition, every petitioner detained by virtue of a state process could invoke and be entitled to consideration of his petition in a federal court, thus making inapplicable the general rule.

Independently of the foregoing, we think the allegation of a "serious emergency" is a conclusion of law. The application for the writ is required to be made by complaint in writing "setting forth the *facts* concerning the detention of the party restrained". (Italics supplied.) 28 U.S.C.A. § 454. No facts are alleged showing what the "serious emergency" is. The statute requires such facts for "mere averments of conclusions of law are necessarily inadequate". Craemer v. Washington State, 168 U.S. 124, 129, 18 S.Ct. 1, 3, 42 L.Ed. 407.

In this connection the court below found that there were, here, exceptional circumstances of an emergency character "as stated in said petition". As thus qualified the finding is of no weight here, since, as we have held, the petition states no exceptional circumstances of an emergency character.

■ Finally, appellant frankly admits that an agreement was reached between the United States and the State of Washington whereby the latter would "hold in abeyance some 70 other cases against other Indian residents * * * providing the United States would immediately test out the right of the State to license Indian fishermen, in

the federal Courts". It would seem, therefore, that the emergency, if any, which previously existed, ended before the instant petition was filed.

The order denying the writ is affirmed.