No. 36,554

THE STATE OF KANSAS, *Appellant*, v. ABE MILLER, *Appellee*.

(166 P. 2d 680)

Opinion filed March 9, 1946.

*Leon W. Lundblade*, assistant attorney general, argued the cause, and *A. B. Mitchell*, attorney general, and *John B. Markham*, county attorney, were on the briefs for the appellant.

Abe Miller *pro se*.

The opinion of the court was delivered by

HOCH, J.: This is an appeal by the state from an order of the district court refusing to dissolve an order in a proceeding for a writ of error *coram nobis*.

Abe Miller, the appellee, was convicted in Labette county, in May, 1940, of entering a bank with intent to rob the bank or the persons therein, and was sentenced under the habitual criminal act to a term

of not less than fifteen years nor more than fifty years in the penitentiary, where he has since been confined.

In July, 1945, he filed an application for a writ of error *coram nobis* in the court where he had been tried and convicted. In September, 1945, the district court ordered the sheriff of Labette county and the warden of the penitentiary to produce the appellee in court for further proceedings in the cause. Upon being advised of this order, apparently granted *ex parte*, the state filed a motion to dissolve the order and also a motion for "a new trial." Both motions were overruled and the state appeals.

The application for the writ was as follows:

"Comes now Abe Miller the defendant in the above entitled cause and respectfully moves and pray the court for an order vacating and holding for naught the verdict judgment and sentence in the above entitled action and grant the movant his relief. For the following reasons and grounds to wit:

"1. Because of newly discovered evidence.

"2. The jury received papers, evidence and exhibits not authorized by the court.

"3. Misconduct on the part of the jury tending to prevent a fair and due consideration of the case.

"4. The verdict was decided by means other than a fair expression of opinion on the part of all jurors.

"5. Erroneous rulings by the court.

"6. Competent witnesses were denied defendant.

"7. Competent evidence in behalf of the defendant was excluded by the court.

"8. The verdict is contrary to law.

"9. That the verdict was contrived by spurious pretentions of evidence contrary to the true facts in the premises and not obtained by a lawful trial of the true evidence according to the requirements of due process of law.

"10. Evidence contrary to the public policies of the State of Kansas was allowed in open court.

"11. A motion for a new trial on competent grounds was denied defendant.

"12. State had no coöperating witnesses to issue of facts.

"13. Movants witnesses testimony was completely ignored.

"14. Perjury was permitted in open court.

"VIOLATION OF ARTICLE 10—BILL OF RIGHTS

"Amendments 5-6-8 and 14 to the constitution of the United States. Witnesses can be subpoenaed to verify each and every contention and allegation."

In support of the petition, there were attached thereto five affidavits. All five were similar in character, each affiant asserting that he saw the defendant at a time and place making it impossible for him to have been at Altamont, Labette county, at the time when

it was alleged the crime had there been committed. One of the five affiants stated in his affidavit that he had been a witness for the defendant at the trial and another of the five stated that his deposition was taken at the time and used at the trial. In a statement submitted with the affidavits the petitioner stated that the affidavit of one of the affiants "could be used as new evidence as this man was not a witness at the trial." It appears, therefore, to be a fair inference that only one of the five could be said to be new witnesses. No other showing was made in connection with the application except these five affidavits in the nature of alibis.

Upon this showing, together with the filing of a poverty affidavit, the trial court issued the order, heretofore mentioned, to the sheriff and to the warden of the penitentiary.

The motion by the state to dissolve the order was based upon the following grounds:

"1. That the Court has no jurisdiction over the person of Abe Miller, the defendant in said case.

"2. That the Court has no jurisdiction over the person of Robert H. Hudspeth, Warden of the Kansas State Penitentiary at Lansing.

"3. That the procedure involved in the application for a writ of *coram nobis* is antiquated, obsolete, has been disproved by the Supreme Court of the State of Kansas on several occasions and has been abolished indirectly by statute.

"4. That compliance with said writ would be an effort on behalf of the Court to change or amend his final order made on the 28th day of May, 1940, since said term is past, no appeal having been taken and no jurisdiction is now resting with the District Court of Labette County, Kansas, upon the person or subject-matter of the above-entitled action."

It is unnecessary to take note of the state's motion for a new trial on the motion to dissolve. It does not appear that motion for a new trial was necessary since questions solely of law were involved.

Briefly stated the ancient common-law writ of error *coram nobis* was a writ used to bring for review or modification a previous judgment of the court, because of some error of fact, and not of law, affecting the validity of the judgment, and *not brought in issue at the trial.* (24 C. J. S. 143.) It is stated in 31 Am. Jur. 323 that the writ, where available, "is used to obtain a review of a judgment where it appears that certain mistakes of fact have occurred *which were not put in issue, were unknown to the court, and were not passed upon.*" (Italics supplied.) Our own decisions are in line with such statements as to the nature of the writ. In *Asbell v. State,* 62 Kan. 209, 61 Pac. 690, it was said:

"The function of the common-law writ is to bring to the attention of the court for correction an error of fact—one not appearing on the face of the record, unknown to the court or party affected, and which, if known in season, would have prevented the judgment which is challenged." (p. 213.)

Similar statements were made in *Dobbs v. State*, 63 Kan. 321, 65 Pac. 658, and in *Collins v. State*, 66 Kan. 201, 71 Pac. 251. In the former case it was said:

"This writ cannot be used to obtain a review of the facts presented to the court at the trial, or which might have been so presented at that trial by the exercise of diligence." (p. 324.)

In the latter case it was said:

"All the decisions are to the effect that the writ lies only to correct errors of fact, in ignorance or disregard of which the judgment was pronounced, to relieve from which no other remedy exists. None of the courts has used it to relieve from the misfortune of being unable to prosecute an appeal for the correction of errors of law." (p. 203.)

From facts hereinbefore noted it clearly appeared that alibi was a principal defense in the trial. To make sure on the point we have examined the district court files in the case. The record conclusively shows that to be true. The defendant served the statutory notice that alibi would be a defense and in the list of prospective alibi witnesses appear the names of four of the five affiants in the present proceeding. The court instructed the jury as to defendant's defense of alibi and the instruction was certainly not unfavorable to the defendant. The affidavits raise no new issue of fact and at best would be nothing more than cumulative. Accordingly, the writ of error *coram nobis* was here inappropriate even if otherwise available. However, we think it desirable to examine somewhat further the place of the writ under our present procedure.

Although the writ of error *coram nobis* has not been specifically abolished by statute in this state our decisions leave little, if any, grounds for regarding it other than obsolete. The last case in which the nature of the writ was examined at any length was *State v. Hawkins*, 142 Kan. 874, 51 P. 2d 914. In that case Hawkins was convicted of murder and about two years after the judgment he sought by such a writ to have the judgment set aside on the ground that his plea of guilty had been entered as a .result of duress. In the opinion it was said:

"The precedent for a writ of error *coram nobis* is the case of *State v. Calhoun*, 50 Kan. 523, 32 Pac. 38, decided in January, 1893. In the years which

have elapsed since that decision was rendered, the remedy has been invoked many times, and each time has been denied." (p. 875.)

In the Calhoun case cited above, new trial was granted upon application for a writ of error *coram nobis* on the ground that Calhoun had pleaded guilty under a state of fear produced by a highly excited state of public feeling and hostility existing against him in the community and threats of lynching freely made and preparations apparently being made to carry out such threats, knowledge of which was communicated to him while in jail. In the Hawkins case, there was evidence that the accused had been subjected to "the third degree" in order to secure a confession but this court said that "despicable as administration of 'the third degree' may be," the evidence of duress was not sufficient to warrant review of the judgment on writ of error *coram nobis*. At some length it was pointed out that there was little evidence that the accused had been put in fear because of threats of mob violence and that therefore the Calhoun case was not controlling. What basis there might be for distinguishing in principle between a case where a plea of guilty was induced by fear of a mob or by other means that would tend to break down the free will of the accused was not pointed out. It seems apparent that the court was simply inclined not·to extend the Calhoun precedent beyond the facts of that case. We need not speculate as to whether the Calhoun case would now be followed in a case involving fear of a mob. In any event, the Calhoun case is the only criminal case we have discovered in our reports where the use of the writ of error *coram nobis* has been sanctioned.

Under the common law the proceedings upon an application for a writ of error *coram nobis* were, like proceedings in habeas corpus, regarded as civil in character. (24 C. J. S. 143, 145; 31 Am. Jur. 322; *State v. Calhoun,* supra.) In *Gibson v. Enright,* 140 Kan. 700, 37 P. 2d 1017, the availability of the writ was considered on an application to set aside a money judgment, the application being filed more than two years after the judgment had been entered. The writ was sought on the ground of newly discovered evidence relating to proof of personal service of summons which had been a material issue in the trial. Issuance of the writ was denied, the syllabus by the court reading:

"A writ of error *coram nobis* will not issue in a civil action where the rights of a litigant are open to redress or otherwise regulated by the code of

civil procedure; nor will its issue be sanctioned as an additional ground for vacating a judgment to those specified and enumerated in the pertinent provisions of the civil code."

In the opinion it was said:

"At the outset the obvious inquiry intrudes: Is the common-law writ of error *coram nobis* impliedly included in or consistent with the code of civil procedure in this state? In a single instance it has been successfully invoked in a criminal case and the trial court's allowance of the writ affirmed. (*State v. Calhoun,* 50 Kan. 523, 32 Pac. 38; 34 A. S. R. 141; 18 L. R. A. 838, and note.) In other criminal cases an application for the writ was tolerantly considered, but invariably denied. (Citing numerous cases.)

"No instance of its use in a civil case can be found in the 140 volumes of our reports, although in the criminal cases above cited this court discussed the writ as if it were not entirely obsolete under our procedure, but that its ancient use, when it was one of the prerogative writs of the King's Bench, had necessarily been curtailed and largely superseded by the statute which prescribes our code of criminal procedure.

"In our code of civil procedure it would seem that every plight which could be relieved through the invocation of a writ of error *coram nobis* can be quite as effectively treated under familiar provisions of the civil code—by motion for a new trial on the statutory grounds (R. S. 60-3001) or by a petition for a new trial if the time to file a motion for a new trial has elapsed. (R. S. 60-3005.)" (p. 701.)

In the opinion in the Enright case note was taken of the provision of the code (G. S. 1935, 60-3822) which reads:

" 'If a case ever arise in which an action or proceeding for the enforcement or protection of a right, or the redress or prevention of a wrong, cannot be had under this code, the practice heretofore in use may be adopted, so far as may be necessary to prevent a failure of justice.' " (p. 703.)

and this comment was made:

"And while, in view of this provision just quoted, it cannot be dogmatically declared that a proper use of the writ of error *coram nobis* can never arise in our practice, it will not lie to disturb a judgment which has become a finality." (p. 703.)

As already noted, the affidavits submitted in support of the instant application relate only to alibi and at best could be regarded as nothing more than a showing of newly discovered evidence. Assuming the writ to be still usable under our procedure it would not be available because of newly discovered evidence under the general common-law rule. (31 Am. Jur. 324; 24 C. J. S. 149, 150; *Gibson v. Enright,* supra, p. 703; *State v. Asbell,* supra, syl. ¶ 3 and p. 216.)

The other grounds set out in the application for the writ relate

almost wholly to alleged trial errors, all of which could have been —and may have been—presented upon motion for a new trial.

We need not say here that under no circumstances is the writ longer available under our procedure. But we are not now aware of a situation where adequate remedies are not provided by our comprehensive codes of civil and criminal procedure—by motions for new trial, on any of the many grounds enumerated in the statutes (G. S. 1935, 60-3001, 62-1603); for arrest of judgment (G. S. 1935, 62-1605, 62-1606); by petition for rehearing on account of newly discovered grounds for new trial (G. S. 1935, 60-3005); by proceedings to vacate or modify judgments (G. S. 1935, 60-3007); for vacation of void judgments (G. S. 1935, 60-3009); for appellate review (G. S. 1935, 60-3302 *et seq.;* 62-1701 *et seq.*) and in addition the relief afforded in habeas corpus proceedings (G. S. 1935, 60-2201 *et seq.*). In any event, no showing was made in the instant case to warrant the issuance of a writ of error *coram nobis.*

The conclusion above stated makes it unnecessary to determine other questions presented. We simply note one of the other contentions made by the appellant that the district court of Labette county had no jurisdiction of the petitioner, an inmate of the penitentiary at Lansing, in Leavenworth county, nor of the warden of the penitentiary. Without considering the question at any length attention is called to *In re Jewett,* 69 Kan. 830, 77 Pac. 567, which involved a proceeding in habeas corpus in which the district court of Johnson county had ordered the warden of the penitentiary at Lansing to bring the petitioner before it, in Johnson county, and in which the order had been served upon the warden by the Johnson county sheriff. Under statutes substantially the same as we have now the question of the territorial limits of jurisdiction of district courts was broadly considered and it was held that the "jurisdiction of the several district courts of this state, and of the judges thereof, in civil matters is confined to their respective districts." A proceeding for issuance of a writ of error *coram nobis* being civil in character, as is a proceeding in habeas corpus, no reason now appears why the same rule would not apply.

The judgment is reversed with directions to sustain the motion to dissolve the order of September 12, 1945, directed to the sheriff of Labette county and to the warden of the state penitentiary upon application of Abe Miller for a writ of error *coram nobis.*