DOWNS v. HUDSPETH, Warden.

CRISP v. SAME.

TOWNSEND v. SAME.

Nos. 1028 H.C., 1039 H.C., 1076 H.C.

District Court, D. Kansas, First Division.

Feb. 17, 1948.

Malcolm McNaughton, of Leavenworth, Kan., for petitioner Downs.

Malcolm McNaughton, of Leavenworth, Kan., for petitioner Crisp.

Harry Miller, Jr., of Kansas City, Kan., for petitioner Townsend.

Edward F. Arn, Atty. Gen., of Kansas, and Harold Fatzer, Asst. Atty. Gen., of Kansas, for respondent.

MELLOTT, District Judge.

The court is this date signing journal entries in the three cases shown in the caption, remanding the several petitioners to the custody of the respondent on the basis of findings of fact and conclusions of law found and made following hearings upon writs of habeas corpus or rules to show cause.

Inasmuch as petitions for writs of habeas corpus are being filed in this court with increasing frequency by inmates of the Kansas State Penitentiary, and since some prisoner-petitioners have indicated a proneness to believe that the court may have acted hastily or ill advisedly in refusing to order their release or to order that they be produced before the court following a hearing upon a rule to show cause, the

court has chosen to monument its views in an opinion.

The petitions in the several cases now before the court allege, in substance, that the petitioners are illegally restrained of their liberty by the Warden of the State Penitentiary because they were deprived of some of their rights under the Federal Constitution in connection with their prosecutions by the state authorities upon charges of murder in the first degree. These include contentions that they were denied counsel; that they were not afforded speedy, fair and impartial trials; that they were mistreated by prosecuting officers; and that they were illegally placed upon trial on informations filed by county attorneys in accordance with the criminal laws of the State of Kansas, rather than upon indictments returned by grand juries. Recognizing the established principle that they cannot invoke the jurisdiction of this court until they have exhausted their remedies under state law, they allege and aver that the Supreme Court of Kansas had denied their applications to be discharged under writs of habeas corpus sued out therein, or had refused to set aside rulings by lower state courts denying their applications for release. In this posture each of the three cases was presented to this court.

The action by the Supreme Court of Kansas in the habeas corpus proceeding filed by petitioner, Harry Downs, is shown in Volume 162 Kan. at page 575, 178 P.2d 219. The eleven grounds therein set out appear to be precisely the same as those set out in the petition filed by him in this court. The contentions made by the petititioner, Carl Lee Crisp, are set out in the opinion of the Supreme Court of Kansas in 162 Kan. 567, 178 P.2d 228. He, likewise, makes substantially the same contentions in the petition filed in this court. The petitioner, Elijah Townsend, following his conviction, appealed to the Supreme Court of Kansas, which, by written opinion published in State v. Townsend, 150 Kan. 496, 95 P.2d 328, affirmed the judgment and sentence of the trial court. Thereafter, a petition for a writ of habeas corpus filed in the Supreme Court of Kansas was denied on the 7th day of August 1947, following which he filed the petition now before this court.

Examination of the petitions indicates that the Federal questions raised by the several petitioners in the Supreme Court of Kansas were decided by it, with the sole exception of whether prosecution must be upon indictment, which will be alluded to by this court later. Thus, in the Downs case, Ground 4, that petitioner was denied the right to counsel, was considered at length by the Supreme Court and found to be without substance; Ground 5, that he was coerced and threatened by the prosecuting attorney was likewise considered and determined against petitioner. In the Crisp case the Federal question involved seems to have been whether the petitioner had been denied counsel. This was resolved against him. In the Townsend case, the petitioner contended, inter alia, that his confinement was in violation of Article XIII and Article XIV of the Amendments to the Constitution of the United States and that there had been a direct violation "of his constitutional right to due process of law." No facts were set out in the petition filed in the Supreme Court supporting that charge; but it was apparently passed upon by the court. In the petition there, as here, petitioner seems to have bottomed his charge that he is being illegally held principally upon the ground that he was convicted upon "perjured testimony." No facts are alleged in the petition now before the court bearing upon any other Federal question, although in Paragraph C of his petition it is stated "the petitioner humbly suggests the fact he was not afforded equal protection nor was this due process of law as provided by constitutional right—Article VI of the Amendments to the Constitution."

At the hearing before this court each of the several petitioners was permitted to argue, although belatedly raised, the contention that prosecution for a capital offense under the laws of the State of Kansas must, of necessity, follow the finding of a true bill by a grand jury and that prosecution on information of the county attorney, following preliminary hearing before an examining magistrate, as permitted by the laws of the state, is a violation of the Fifth and Fourteenth Amendments and a denial

of due process of law. This question, together with questions of procedure, has been discussed in briefs filed on behalf of the petitioners since the cases were tried.

The question of the power of this court to release, in a habeas corpus proceeding, one in the custody of state authorities, will be discussed at some length to the end that these petitioners and others similarly situated may be reasonably advised as to their rights, as understood by this court.

The applicable statute is Section 753 of the Revised Statutes Title 28 U.S.C.A. § 453, which reads as follows:

"The writ of habeas corpus shall in no case extend to a prisoner in jail unless where he is in custody under or by color of the authority of the United States, or is committed for trial before some court thereof; or is in custody for an act done or omitted in pursuance of a law of the United States, or of an order, process, or decree of a court or judge thereof; or is in custody in violation of the Constitution or of a law or treaty of the United States; or, being a subject or citizen of a foreign State, and domiciled therein, is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, or order, or sanction of any foreign State, or under color thereof, the validity and effect whereof depend upon the law of nations; or unless it is necessary to bring the prisoner into court to testify."

In a case decided by the Supreme Court of the United States—In re Neagle, 135 U.S. 1, 70, 10 S.Ct. 658, 670, 34 L.Ed. 55— the history of the statute was set out in the following language:

"The enactments now found in the Revised Statutes of the United States on the subject of the writ of habeas corpus are the result of a long course of legislation forced upon congress by the attempt of the states of the Union to exercise the power of imprisonment over officers and other persons asserting rights under the federal government or foreign governments, which the states denied. The original act of congress on the subject of the writ of habeas corpus, by its fourteenth section, authorized the judges and the courts of the United States, in the case of prisoners in jail or in custody under or by color of the authority of the United States, or committed for trial before some court of the same, or when necessary to be brought into court to testify, to issue the writ, and the judge or court before whom they were brought was directed to make inquiry into the cause of commitment. 1 St. 81 [c. 20, § 14]. This did not present the question, or at least it gave rise to no question which came before the courts, as to releasing by this writ parties held in custody under the laws of the states. But when, during the controversy growing out of the nullification laws of South Carolina, officers of the United States were arrested and imprisoned for the performance of their duties in collecting the revenue of the United States in that state and held by the state authorities, it became necessary for the congress of the United States to take some action for their relief. Accordingly the act of congress of March 2, 1833, (4 St. 634 [c. 57, § 7],) among other remedies for such condition of affairs, provided by its seventh section that the federal judges should grant writs of habeas corpus in all cases of a prisoner in jail or confinement, where he should be committed or confined on or by any authority or law for any act done or omitted to be done, in pursuance of a law of the United States, or any order, process, or decree of any judge or court thereof.

"The next extension of the circumstances on which a writ of habeas corpus might issue by the federal judges arose out of the celebrated McLeod Case [25 Wend. (N.Y.) 483, 37 Am.Dec. 328], in which McLeod, charged with murder, in a state court of New York, had pleaded that he was a British subject, and that what he had done was under and by the authority of his government, and should be a matter of international adjustment, and that he was not subject to be tried by a court of New York under the laws of that state. The federal government acknowledged the force of this reasoning, and undertook to obtain from the government of the state of New York the release of the prisoner, but failed. He was, however, tried and acquitted, and afterwards released by the state of New York. This led to an extension of the powers of

the federal judges under the writ of habeas corpus by the act of August 29, 1842, (5 St. 539 [c. 257],) entitled 'An act to provide further remedial justice in the courts of the United States.' It conferred upon them the power to issue a writ of habeas corpus in all cases where the prisoner claimed that the act for which he was held in custody was done under the sanction of any foreign power, and where the validity and effect of this plea depended upon the law of nations. In advocating the bill, which afterwards became a law on this subject, Senator Berrien, who introduced it into the senate, observed: 'The object was to allow a foreigner prosecuted in one of the states of the Union for an offense committed in that state, but which, he pleads, has been committed under authority of his own sovereignty or the authority of the law of nations, to be brought up on that issue before the only competent judicial power to decide upon matters involved in foreign relations or the law of nations. The plea must show that it has reference to the laws or treaties of the United States or the law of nations; and showing this, the writ of habeas corpus is awarded to try that issue. If it shall appear that the accused has a bar on the plea alleged, it is right and proper that he should not be delayed in prison, awaiting the proceedings of the state jurisdiction in the preliminary issue of his plea at bar. If satisfied of the existence in fact and validity in law of the bar, the federal jurisdiction will have the power of administering prompt relief.' No more forcible statement of the principle on which the law of the case now before us stands can be made.

"The next extension of the powers of the court under the writ of habeas corpus was the act of February 5, 1867, (14 St. 385 [c. 28];) and this contains the broad ground of the present Revised Statutes, under which the relief is sought in the case before us, and includes all cases of restraint of liberty in violation of the constitution or a law or treaty of the United States, and declares that 'the said court or judge shall proceed in a summary way to determine the facts of the case, by hearing testimony and the arguments of the parties interested, and, if it shall appear that the petitioner is de-prived of his or her liberty in contravention of the constitution or laws of the United States, he or she shall forthwith be discharged and set at liberty.' "

■ At the risk of oversimplifying the whole question it may be stated that a Federal court may not release a state prisoner or inquire into the legality of his detention by state authorities unless it is claimed that he is in custody in violation of the Constitution of the United States or in violation of a law or treaty of the United States. Whether he is or not is, in the language frequently used by the courts, "a Federal question." Therefore, the right of this court to issue a writ of habeas corpus for one held in a state prison exists only when it is made to appear that a Federal question is involved.

■■ But to give a Federal Court jurisdiction to grant a writ of habeas corpus it is not sufficient for the petition merely to allege generally, as was done in some of the petitions now before this court, that the petitioner is held in violation of the Constitution or a law or treaty. There must be set out in the petition and proved at the hearing specific facts showing a violation of the Constitution or of a law or treaty. Moreover, it must always be borne in mind that state courts are bound by the Constitution and laws of the United States and quite generally strive to see that no one is deprived of the rights so afforded. It is for that reason that Federal courts are reluctant to interfere, by habeas corpus, with a state's administration of its criminal law, unless fundamental rights specially secured by the federal Constitution are invaded. Rogers v. Peck, 199 U.S. 425, 26 S.Ct. 87, 50 L.Ed. 256. "The due and orderly administration of justice in a state court is not to be * * * interfered with save in rare cases where exceptional circumstances of peculiar urgency are shown to exist." United States ex rel. Kennedy v. Tyler, 269 U.S. 13, 17, 46 S.Ct. 1, 3, 70 L.Ed. 138.

■■ While this opinion is not meant to be a full and complete discussion of all the rights of state prisoners, it may be stated generally that a Federal court has no right to interfere by habeas corpus with the imprisonment of a person under a judg-

ment of conviction of a crime in a state court if that court had jurisdiction to try the case and jurisdiction over the person of the accused and did not lose such jurisdiction during the trial. Felts v. Murphy, 201 U.S. 123, 26 S.Ct. 366, 50 L.Ed. 689: Questions of state practice and procedure and rights guaranteed by the state constitutions and laws are to be passed upon by the state courts and their decisions are binding upon, and may not be controlled by, Federal courts.

■ "Ordinarily an application for habeas corpus by one detained under a state court judgment of conviction for crime will be entertained by a federal court only after all state remedies available, including all appellate remedies in the state courts and in * * * [the Supreme Court of the United States] by appeal or writ of certiorari, have been exhausted." Ex parte Hawk, 321 U.S. 114, 116, 64 S.Ct. 448, 450, 88 L.Ed. 572.

■ What are the remedies available to prisoners confined for violation of the laws of Kansas? Under Section 3 of Article 3 of the state Constitution the Supreme Court of Kansas has original jurisdiction in habeas corpus. This "is recognized as affording a remedy for a person held in prison in violation of a right guaranteed by the Federal Constitution." Cochran v. Kansas, 316 U.S. 255, 258, 62 S.Ct. 1068, 1070, 86 L.Ed. 1453; In re Jarvis, 66 Kan. 329, 71 P. 576. Under Chapter 60, Article 22, G.S.Kans.1935, District Courts, and under Chapter 59, Article 3, G.S.Supp.1945, Probate Courts likewise, have power and jurisdiction to issue writs of habeas corpus "to inquire into the cause of the restraint" and to "[deliver] therefrom when illegal," and appeals to the Supreme Court from orders denying release from custody may be taken. Moreover, after sentence, the prisoner may secure relief by an action or proceeding in the sentencing court by a writ in the nature of a writ of coram nobis, State v. Calhoun, 50 Kan. 523, 32 P. 38, 18

L.R.A. 838, 34 Am.St.Rep. 141; although there seems to be relatively few grounds for invoking it in view of the broad remedies provided by the codes of civil and criminal procedure. State v. Hawkins, 142 Kan. 874, 51 P.2d 914; State v. Miller, 161 Kan. 210, 166 P.2d 680, certiorari denied 329 U. S. 749, 67 S.Ct. 76, 91 L.Ed. ——. Thus the procedural difficulties attending the securing of adequate review by the courts of some of the states—see e. g. the concurring opinion of Mr. Justice Rutledge in Marino v. Ragen, 68 S.Ct. 240, decided by the Supreme Court of the United States December 22, 1947—are not present in Kansas. The requirement that state remedies be exhausted, therefore, works little, if any, hardship on prisoners in the custody of Kansas authorities.

This court now passes to other principles which must be kept in mind in dealing with petitions for writs of habeas corpus instituted in this court by prisoners confined in the Kansas State Penitentiary. Many of them were discussed recently by the Supreme Court of the United States in Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572; House v. Mayo, 324 U.S. 42, 65 S.Ct. 517, 89 L.Ed. 739; and White v. Ragen, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348. These three decisions were reviewed by the Circuit Court of Appeals for the Sixth Circuit in Dawsett v. Benson, 156 F. 2d 669, in which the court was dealing with a prisoner confined by the State of Michigan. The analysis of the cited cases by the latter court has been helpful to this court; so the conclusions reached by it will, to some extent, be repeated.

Reviewing first the ruling of the Supreme Court in Sharpe v. Buchanan, 317 U.S. 238, 63 S.Ct. 245, 87 L.Ed. 238, the court concluded that that case had not had the effect of modifying the rule enunciated in various decisions,[1] requiring a petitioner to exhaust his remedies by appealing from the ruling of the state court or applying to the Supreme Court of the United States for a writ

---

[1] The court cites in this connection Tinsley v. Anderson, 171 U.S. 101, 104, 105, 18 S.Ct. 805, 43 L.Ed. 91; Urquhart v. Brown, 205 U.S. 179, 27 S.Ct. 459, 51 L.Ed. 760; United States ex rel. Kennedy v. Tyler, 269 U.S. 13, 46 S.Ct. 1, 70 L.Ed. 138; Woolsey v. Best, 299 U.S. 1, 57 S.Ct. 2, 81 L.Ed. 3; Ex parte Abernathy, 320 U.S. 219, 64 S.Ct. 13, 88 L. Ed. 3; McCrea v. Jackson, 6 Cir., 148 F. 2d 193; Rowan v. People, 6 Cir., 147 F. 2d 138.

of certiorari after his application for a writ of habeas corpus had been denied by the Supreme Court of the State. It was pointed out that no federal question had been involved, that the decision in the state courts had been a final one, that it was not subject to review by the Supreme Court of the United States and therefore that no application for review by the Supreme Court had been necessary in order to exhaust all available state remedies.

Passing to the more recent cases—Ex parte Hawk; House v. Mayo and White v. Ragen, supra—it was pointed out that (1) where the state passes on the merits, and (2) a federal question is involved, a review, or application for a review, by the Supreme Court of the United States is necessary in order to exhaust the available state remedies. The court said [156 F.2d 671]:

"The two situations are well presented by the two later Supreme Court cases of Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572, and House v. Mayo, 324 U.S. 42, 65 S.Ct. 517, 521, 89 L.Ed. 739. In House v. Mayo the Court, in referring to the effect of a review by the Supreme Court of a state court ruling said: 'But that rule is inapplicable where, as here, the basis of the state court decision is that the particular remedy sought is not one allowed by state law, for in such a case this Court lacks jurisdiction to review the decision.' Subsequently, in White v. Ragen, 324 U.S. 760, 65 S.Ct. 978, 981, 89 L.Ed. 1348, the Court referred to its previous rulings in Ex parte Hawk and House v. Mayo and stated the applicable rule in full as follows:

" 'Where the highest state court in which a decision could be had, considers and adjudicates the merits of a petition for habeas corpus, state remedies, including appellate review, are not exhausted so as to permit the filing of a petition for habeas corpus in a federal District Court, unless the federal question involved is presented to this Court on certiorari or appeal from the state court decision. Ex parte Hawk, supra, 321 U.S. 116-117, 64 S.Ct. 449, 88 L.Ed. 572.

" 'If this Court denies certiorari after a state court decision on the merits, or if it reviews the case on the merits, a federal District Court will not usually re-examine on habeas corpus the questions thus adjudicated. Ex parte Hawk, supra, 321 U.S. 118, 64 S.Ct. 450, 88 L.Ed. 572. But where the decision of the state court is that the remedy of habeas corpus is not available under the state practice, or its decision is based upon some other adequate non-federal ground, it is unnecessary for the petitioner to ask this Court for certiorari in order to exhaust his state remedies, since we would lack jurisdiction to review the decision of the state court; and the denial of certiorari by this Court would not preclude a District Court from inquiring into the federal question presented to, but not considered by, the state court. See House v. Mayo, supra, [324 U.S. 48], 65 S.Ct. 521 [89 L.Ed. 739].' "

■■■ The question in the Townsend case now before the court is almost, if not precisely, the same as the question before the court in Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177, 178, 87 L.Ed. 214. In that case the Supreme Court of the United States remanded it to the Supreme Court of Kansas, for determination of the verity of the allegations which the petitioner had made, that perjured evidence was used and favorable evidence suppressed with the knowledge of the Kansas authorities, these allegations being sufficient to "charge a deprivation of rights guaranteed by the Federal Constitution, and, if proven, * * * [to entitle] petitioner to release * * *." As earlier pointed out, the petitions in the Downs and Crisp cases likewise raised federal questions which were considered and adjudicated in the State Supreme Court. Such federal questions, therefore, should have been presented to the Supreme Court of the United States by appeal or petition for certiorari; and, since that was not done in any of the cases, it must be held that each of the petitioners failed to exhaust his state remedies. That being so, this court is of the opinion and now holds that it has no jurisdiction to hear any of the three petitions now before it. See also Nusser v. Aderhold, 5 Cir., 164 F.2d 127; Spidel v. Benson, 6 Cir., 162 F.2d 197; United States v. Warden of Clinton State Prison, 2 Cir., 163 F.2d 978; Gebhart v. Amrine, 10 Cir., 117 F.2d 995; and Bernard v. Brady, 4 Cir., 164 F.2d 881.

952

What has been said is dispositive of the three cases. The issue interjected at the hearings before this court—i. e. whether prosecution in a state court upon information offends against the Fifth and Fourteenth Amendments—appears not to have been raised by any of the petitioners in the Supreme Court of Kansas. That court should be permitted to pass upon the question; and until it has done so this court should refrain from expressing any opinion.