**Elizabeth Diane (Winter) SCOTT, Plaintiff,**

v.

**UNITED STATES of America and particularly Captain C. W. Bramlett, Commanding Officer of the Navy Regional Medical Center, Millington, Tennessee, and the State of Tennessee, Department of Human Services, Horace Bass, Commissioner, and the Shelby County Division of the Department of Human Services, Defendants.**

**No. 79–2169–W.**

United States District Court, W. D. Tennessee, W. D.

June 20, 1979.

Kemper B. Durand, Memphis, Tenn., for plaintiff.

Maurice Franklin, Asst. U. S. Atty., Memphis, Tenn., for the United States.

Gail Mathes, Memphis, Tenn., guardian ad litem.

William B. Hubbard, Asst. Atty. Gen., Nashville, Tenn., for State of Tenn.

Alice Cartwright Allen, Asst. Gen. Counsel, Memphis, Tenn., for Human Services.

## ORDER

WELLFORD, District Judge.

A petition for writ of habeas corpus was filed in this Court by the mother of a fifteen-month old child. The petitioner alleged that the infant had been unconstitutionally taken from her possession while in the care of the United States Naval Hospital at Millington, Tennessee. The hospital had retained custody of the child pursuant to TCA § 37–1204.[1] The plaintiff-mother complained that certain provisions in Chapter 12, Title 37, of the Tennessee Code are unconstitutional because they caused her to be deprived of her minor child without due process. The petition sets out that an examining Naval Base physician retained the child after treatment and observation and notified the Tennessee Department of Human Services of his action, and that two social workers for the Department appeared and advised the plaintiff that the child was being held under TCA § 37–1204.

The petition further asserts that the child has been taken into custody pursuant to an order of the Juvenile Court officer of Shelby County, Tennessee, and that the order was based on an "unsubstantiated belief of immediate danger."

It was prayed that the Court enter a writ of habeas corpus to command the child to be brought before the Court and that the Court enter an order "as will best serve his welfare and in conformity with the Constitution."

The Court declined to issue an immediate temporary restraining order and set the matter for a hearing at which time an

---

1. § 37–1204. *Retention of custody by hospital.*—Objections.—The person in charge of any hospital or similar institution may, when he believes it necessary for the health of the child, retain custody of the child after reporting under § 37–1203 until the next regular week day session of the juvenile court, regardless of whether additional medical treatment is required during that period and regardless of whether the child's parent or guardian requests the return of the child during that period.

If the parent, guardian, or other custodian of the child objects to the hospital or similar institution retaining custody of the child, the person in charge of such hospital or similar institution shall report the matter to the county office of the department, which shall immediately proceed under chapter 2 of title 37, to obtain such protection of the child as the department may deem necessary, including court orders with respect to custody when appropriate, and shall make the full investigation and report required by § 37–1206.

opportunity would be presented for a representative of the State of Tennessee to be heard, as well as the representative of the United States. At the hearing, the Court appointed Gail Mathes, an attorney, as guardian ad litem for the minor. The Court took under advisement the issuance of a writ or injunctive order as prayed by the plaintiff and her counsel.

At the time of the hearing, it was brought out that a class action suit had previously been filed in the Chancery Court of Davidson County, Tennessee, styled *Beaty v. Bass, et al.*, No. A–6752, wherein a consent order dealing with the Tennessee statute at issue here had prescribed certain procedures and standards under a declaratory judgment. Among other things, the plaintiff's counsel contends that the procedures set out in the state court order with regard to summary removal of the custody of the child were not followed.

The following time schedule appears to be involved in this case from the entire record available to the Court at this time.

Monday, March 12, 1979—U. S. Naval Hospital retained custody of William Nicholas Winter, a minor.

Tuesday, March 13, 1979—Tennessee Department of Human Services obtained *ex parte* order from the Juvenile Court granting the Department temporary custody under the Tennessee law. Petition for writ of habeas corpus filed in this Court.

Wednesday, March 14, 1979—Tennessee Department of Human Services filed petition in Juvenile Court pursuant to Chapter 2 of Title 37, TCA, and hearing was set for March 15.

Thursday, March 15, 1979—counsel for plaintiff notified by telephone of hearing and plaintiff's counsel obtained continuance until Friday, March 16.

This Court's hearing took place on the morning of Friday, March 16, 1979, and adjourned in order that the parties could proceed to the scheduled hearing before the Juvenile Court.

The Court is advised that on March 16, the Juvenile Court awarded custody of the infant in question to the plaintiff, with protective supervision by the Department of Human Services, and set a further hearing for April 17, 1979. Before that hearing, the minor was taken to the Fayette County Hospital on Saturday, March 31, 1979, by his grandmother with certain physical indicia of possible abuse. Again, a protective order was issued by the Juvenile Court and custody was awarded subsequently to the maternal grandmother by consent of all parties, with trial rescheduled for June 29 at the request of counsel for the plaintiff.

This Court has asked the parties to submit memoranda concerning continuing jurisdiction of this Court under the circumstances. Two overriding principles must be considered. First, federal courts generally do not involve themselves in either domestic relations or child custody matters. *State of Ohio ex rel. Popovici v. Agler*, 280 U.S. 379, 50 S.Ct. 154, 74 L.Ed. 489 (1930); *Solomon v. Solomon*, 516 F.2d 1018 (3rd Cir. 1975); *Hernstadt v. Hernstadt*, 373 F.2d 316 (2d Cir. 1967); *Gullo v. Hirst*, 332 F.2d 178 (4th Cir. 1964); *Albanese v. Richter*, 161 F.2d 688 (3d Cir. 1947); *Delavigne v. Delavigne*, 402 F.Supp. 363 (D.Md.1975), *aff'd.*, 530 F.2d 598 (4th Cir. 1976).

A second basis for this Court's consideration of jurisdiction is *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), as expanded insofar as abstention is concerned in *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977).

It seems evident in this case that proceedings were commenced in state court pursuant to state statute dealing with the general subject of juveniles and specifically with the difficult problem of child abuse at the time this action was instituted in federal court. It now appears appropriate that the Court abstain from going forward in a field which is traditionally reserved to state courts and which juvenile courts are particularly equipped to consider. Furthermore, there is a pending action in state court seeking declaratory judgment as to the statute in question.

Plaintiff-petitioner relies primarily on *Sims v. State Department of Public Welfare*, 438 F.Supp. 1179 (S.D.Tex.1977). A close examination of that case involving somewhat similar issues reveals, however, that it is not applicable to the facts in this case. In the *Sims* case, minor children were taken into custody by the Texas agency on March 25, 1976, and it was not until April 5 that a hearing was held in the Texas court on the parents' petition for writ of habeas corpus. Furthermore, from April 6 until May 5, following the preliminary hearing, no notice or process was served upon the plaintiffs-parents with regard to pending proceedings, during which time the children remained in custody of the County Child Welfare Unit. The court noted also in *Sims* at page 1187:

> There is no pending state civil litigation about which even to consider abstention.

And, further, the court noted:

> the plaintiffs' constitutional challenge is directed primarily at the legality of the children's seizure and detention for a 42-day period without a hearing.

This Court simply does not believe that the facts in this case compare to those in *Sims*. Abstention is appropriate in this case because there is a pending state suit considering the propriety of the retention of custody over the child, and constitutional issues, if any, should properly be presented first in state court in consideration of comity and federalism. *See Moore v. Sims*, —— U.S. ——, 99 S.Ct. 2371, 60 L.Ed.2d 944 (1979), reversing the decision reported in 438 F.Supp. 1179.

Furthermore, there has been no showing of any extraordinary situation requiring the federal court to intervene in pending state proceedings. Plaintiff has received a prompt opportunity for a hearing in state court. There has been no prima facie showing, as in *Sims*, of any lack of due process by a lengthy withholding of custody without a meaningful opportunity to be heard. In a sense, then, it may be said that the issue presented initially to this Court has become moot.

The defendant's motion to dismiss should be granted for the reasons stated.