Michael RUFFALO, Jr., et al., Plaintiffs,

v.

Benjamin CIVILETTI, et al., Defendants.

No. 80–0675–CV–W–6.

United States District Court, W. D. Missouri, W. D.

Sept. 30, 1981.

Jack Novik, A.C.L.U., New York City, George Kannor, Children's Rights Project, A.C.L.U., New York City, Sanford, Krigel, Krigel, Perlstein & Krigel, Kansas City, Mo., for plaintiffs.

Mark Zimmermann, Asst. U.S. Atty., Kansas City, Mo., George E. Kapke, Independence, Mo., for defendants.

## MEMORANDUM AND ORDER TEMPORARILY STAYING CLAIM FOR DECLARATION OF RIGHTS AND INJUNCTIVE RELIEF AND SCHEDULING FURTHER PROCEEDINGS

SACHS, District Judge.

Plaintiff Donna Ruffalo, by motion for partial summary judgment filed July 7, 1981, seeks a determination that certain federal defendants and defendant Michael Ruffalo, Sr., (Ruffalo), her former husband, have violated her constitutional rights under the Fifth Amendment by depriving her, without due process of law, of her right to visitation and custody of her son, Michael Ruffalo, Jr., (Mike). The federal involvement arises from Ruffalo's inclusion in the Witness Protection Program, in November 1978, at which time he and his son were transported, under protection of the United States Marshals Service, to an undisclosed place of new residence and were given new identities. See note preceding 18 U.S.C. § 3481.

On September 14, 1981, Ruffalo filed a motion seeking a stay of these proceedings so that he could seek a custody hearing in State Circuit Court, where the Ruffalos were divorced and where certain custody orders have heretofore been entered. For reasons developed below, a ninety-day stay will be granted, subject to the further orders of the Court, so that Ruffalo may promptly move for the stated relief, without burdening the parties with further concurrent litigation in this Court as to the injunctive aspects of this case.[1]

While this case involves a custody battle of the sort which is frequently litigated in state court, it has considerable novelty as a federal case. In one unreported federal litigation, the Marshals Service provided the sort of relief here requested by plaintiff, under a consent decree, after it was determined that a protected witness's children had been included in the program through misrepresentation of the witness's custody rights. *Salmeron v. Gover*, Civ.No. 810471 (D.D.C. May ___, 1981).[2] In the only reported case on the subject, a father unsuccessfully sought a writ of mandamus requiring disclosure of information regarding his children (*Leonhard v. Mitchell*, 473 F.2d 709 (2d Cir. 1973) cert. den., 412 U.S. 949, 93 S.Ct. 3011, 37 L.Ed.2d 1002) and was thereafter denied damages because his claims were barred by the statute of limitations. *Leonhard v. United States*, 633 F.2d 599 (2d Cir. 1980) cert. den., ___ U.S. ___, 101 S.Ct. 1975, 68 L.Ed.2d 295. The Leonhard children were, however, ultimately voluntarily returned to that plaintiff by his former wife, whose second husband was a protected witness.

The present case has various factual and legal difficulties that will be further outlined because such discussion may be helpful to the state court, which has the ulti-

---

1. Plaintiff's damage claims have already been separated out for deferred treatment; such deferral will be modified in accordance with this order.

2. The materials and affidavits before the Court suggest that the Marshals Service returned the children without the consent of the witness, and without an adjudication in which she was a party. If so, justice was rough, to say the least.

mate responsibility for determining where custody should lie.

First, however, plaintiff's objections to a stay will be discussed. Plaintiff contends that there has been a clear violation of her constitutional rights, that custody rights have long since been resolved, and that this Court should restore her son to her before the third anniversary of his departure. Federal jurisdiction to act in unusual child custody conflicts that rise to the level of constitutional controversies is asserted under litigation involving the Vietnamese Orphan "Babylift". *Nguyen Da Yen v. Kissinger,* 528 F.2d 1194 (9th Cir. 1975). Triggering federal jurisdiction in that case was "governmental involvement in facilitating and maintaining the allegedly illegal physical and legal custody" exercised by others. l.c. 1202–3. Analogous jurisdictional claims have been asserted here.

All parties agree, however, that in this case the final word as to custody should come from the Missouri Circuit Court. Even if this Court were inclined to favor plaintiff's contention as to her ultimate rights, a matter on which no expression is here intended, no definitive ruling would be appropriate until defendant Ruffalo has exhausted his stated intention of seeking a ruling allowing him to retain actual custody of Mike, now twelve years old. It would disturb an already troubled situation if this Court were to order a change of residence when the Circuit Court might, on full consideration of current facts, conclude that Mike's present residence is more appropriate for him at this time. Courts should guard against unnecessarily "uprooting" and "transplanting" children. *Schmidt v. Schmidt,* 591 S.W.2d 260, 262 (Mo.App. 1979).

Plaintiff asserts Ruffalo has been dilatory. The Court is advised, however, that only recently has Ruffalo been assured of (federal) funding that would permit him to present his custody claim in Circuit Court. There is some implication, moreover, that Ruffalo has been fearful of exposing himself to needless danger. He has been identified as a possible target of murder, and

was included in the federal program upon an administrative determination that he was in jeopardy. Plaintiff has herself failed to move with any great speed in presenting the injunctive aspect of her year-old case, and she was also slow in filing this litigation, presumably because she had difficulty in obtaining counsel (she is represented by the American Civil Liberties Union). The Court concludes that Ruffalo has a significant possibility of success, and should be given an opportunity to present this matter to the Circuit Court.

A review of previous Circuit Court proceedings indicates the following: (1) at the time of the Ruffalo divorce, plaintiff was granted custody of Mike, then an infant; (2) Ruffalo sought a change of custody in 1975, at which time the Circuit Court approved a settlement between the parties in which plaintiff retained nominal custody, but Ruffalo received general "possession" of the child, subject to plaintiff's visitation rights; (3) after Ruffalo and Mike entered the Witness Protection Program, which necessarily cut off plaintiff's visitation rights, he was adjudged, in a default proceeding, to be in civil contempt; and (4) after another default, by judgment entry dated July 24, 1979, Circuit Judge Robert A. Meyers granted full custody to plaintiff. Judge Meyers was informed that Ruffalo was a government informant "now in protective custody" (an ambiguous and possibly misleading characterization), that plaintiff was a "fit and able person to care for her son," and that Ruffalo had some years ago abused and threatened her and had been in the penitentiary three times. It may be doubted that Judge Meyers was fully advised concerning the Witness Protection Program. He, of course, had no information about the suitability of the new life which the parties had entered into or the preferences of young Mike (then nearing ten years of age, now twelve). Presentation of such matters to the State Circuit Court at this time may be difficult, in that the Court has been advised, and accepts for purposes of these proceedings, that Ruffalo's life is in great danger if disclosures are made allowing his current residence to

be traced. A ruling based on guarded testimony as to current conditions and on presentations by both contesting parents is much to be preferred, however, to the necessarily limited and one-sided view of the matter previously obtained by the Circuit Court.

This Court expresses no opinion as to the weight to be given to the prior default judgment. Ruffalo offers various reasons for having allowed the matter to go by default, and in any event the present interests of the child would appear to be entitled to paramount consideration. It is possible, moreover, that a conference involving all parties and Mike will make it obvious to all where Mike's best interests lie; for example, if he should express a strong and credible preference for remaining with his father, and if Ruffalo's manner of living is suitable for the upbringing of the child. See *Schmidt v. Schmidt*, supra, and *In re Marriage of Campbell*, 599 S.W.2d 256 (Mo. App.1980) for recent references to the consideration to be given to the preferences of a child.[3] While the Court authorizes a stay to permit further litigation in state court, it is possible that a conference would demonstrate to counsel how such litigation would come out, and would thus result in an agreement that would narrow this case to litigation of plaintiff's damage claims.

A ruling for Ruffalo as to current custody would moot the present injunction suit, and would leave plaintiff with her damage claims.[4] A ruling for plaintiff, on the other hand, if directed to be put into effect in the near future, would presumably be complied with by Ruffalo, with cooperation by the federal officials, even if this should require Ruffalo's relocation for a second time. When carried out in accordance with due process, the practice followed in *Salmeron* is to be commended. The Witness Protection Program should not be used to evade family responsibilities under state laws.

It is therefore ORDERED that further proceedings on plaintiff's claim for a declaration of rights and injunctive relief are hereby stayed for a period of ninety days, subject to the further orders of the Court.

It is further ORDERED that a pretrial conference is hereby scheduled, pursuant to Rule 16, F.R.Civ.Proc., at 3:00 p. m., October 14, 1981. A conference telephone call will be held by the Court if requested by New York counsel for plaintiff. Otherwise the conference will be in Room 443, United States Courthouse, Kansas City, Missouri. The parties should review their preparation for presenting the damage claims, either by motion for summary judgment or by trial, and be prepared to propose any necessary discovery and further appropriate proceedings to resolve the damage claims.

---

**3.** Similar considerations were stated in a recent federal decision involving "Operation Babylift," and the court also emphasized the need for a fully informed custody decision by a judge in a local "court of family law." *Huynh Thi Anh v. Levi*, 586 F.2d 625, 632–4 (6th Cir. 1978). A difference favoring the present plaintiff is that the cited federal case was filed after state court proceedings were begun. It is doubtful, however, that mere procedural priority was a controlling factor.

**4.** Although the first *Leonhard* case appeared to rule that there was "no violation" of constitutional rights when visitation rights were summarily terminated (473 F.2d at 714) the court softened that phrase by also referring to an absence of any "clear" constitutional right of one party to visitation rights. l.c. 713. The second *Leonhard* case expressly reserved ruling on the issue. 633 F.2d at 618. From the materials presented, it does appear that plaintiff was initially deprived of visitation rights, in essence, rather than full-fledged custody. Beginning in July 1979, however, defendant Ruffalo has been violating a custody ruling. The damage claims would appear, therefore, to have two aspects, and it may be noted that the federal involvement and possible liability relates most clearly to the more debatable portion of the claim.