**Michael RUFFALO, Jr., et al., Plaintiffs,**

**v.**

**Benjamin CIVILETTI, et al., Defendants.**

**No. 80–0675–CV–W–6.**

United States District Court,
W. D. Missouri, W. D.

April 30, 1982.

Jack Novik, A.C.L.U., George Kannar, Children's Rights Project, A.C.L.U., New York City, Sanford Krigel, Krigel, Perlstein & Krigel, Kansas City, Mo., for plaintiffs.

Mark Zimmermann, Asst. U. S. Atty., Kansas City, Mo., George E. Kapke, Independence, Mo., for defendants.

ORDER GRANTING IN PART AND DENYING IN PART FEDERAL DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

SACHS, District Judge.

This is a suit for damages and injunctive relief against plaintiff Donna Ruffalo's ex-husband, Michael Ruffalo, Sr. (Ruffalo), and numerous federal defendants, arising out of the allegedly wrongful inclusion of Michael Ruffalo, Jr. (Mike), the son of plaintiff and Ruffalo, in the federal Witness Protection Program. The facts are summarized in our prior memorandum opinion and order, reported at 522 F.Supp. 778 (W.D.Mo.1981). In that order, we stayed proceedings to allow Ruffalo to seek to modify the custody order in Missouri Circuit Court. The Circuit Court did not reach the merits, however, because Ruffalo declined to appear personally and submit to jurisdiction, apparently because of a pending contempt citation issued by the Circuit Court after Ruffalo disappeared with Mike, upon admission to the Witness Protection Program.[1] At this time, we take up the motion of the federal defendants to dismiss or for summary judgment and plaintiffs' motion for partial summary judgment.

The federal defendants contend that plaintiff's claims should be dismissed on a variety of grounds: (1) plaintiff's constitutional claims should be dismissed because no violation of plaintiff's constitutional rights occurred; (2) plaintiff's constitutional claims should be dismissed because they are barred by immunity; (3) plaintiff's Federal Tort Claims Act (FTCA) claims should be dismissed because they are barred by the discretionary function exception of the FTCA, 28 U.S.C. § 2680(a); (4) plaintiff's Freedom of Information Act (FOIA) and Privacy Act claims should be dismissed because they are barred by the invasion-of-privacy and interference-with-law-enforcement exemptions of the FOIA, 5 U.S.C. § 552(b)(6) and (7); (5) plaintiff's Administrative Procedure Act claims should be dismissed because defendants' actions are unreviewable and (6) defendants Civiletti and Hall should be dismissed as defendants due to lack of personal jurisdiction, improper venue, insufficiency of process and insufficiency of service of process. We address each of these matters in turn.

### Constitutional Claims

Plaintiffs' complaint alleges that the defendants

have violated the Due Process Clause of the Fifth Amendment ... by unreasonably intruding upon Donna Ruffalo's right to family integrity and to a relationship with her son, by failing to provide Donna Ruffalo with a hearing before infringing upon her constitutionally protected liberty interests, and by interfering with and destroying Donna Ruffalo's right to enforce the order of the Circuit Court of Jackson Co., Missouri.

A similar claim is made on behalf of Mike.[2]

The Supreme Court observed in *Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S.Ct. 549, 554, 54 L.Ed.2d 511 (1978), "We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected." (*citing Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Stanley v. Illinois*, 405

1. Although the State Court proceeding proved abortive, the Court is interested in the informal comments by Circuit Judge Mason (Tr. 19) indicating that the custody order would be subject to current reevaluation, presumably to determine (1) Mike's preferences, (2) whether Ruffalo could present facts not previously considered in the ex parte proceeding terminating his custodial rights, and (3) possible change of circumstances during the more than three years in which Mike has been in his father's de facto custody.

2. Mike is named as a plaintiff, appearing by his mother as next friend. His current preferences are, of course, unknown, and it is logically possible he should be aligned as a defendant resisting a change of residence.

952

U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)). The defendants contend that this constitutional protection does not extend to non-custodial parents, who have only a right to visitation. We are not persuaded that a non-custodial parent's relationship with his or her child is not subject to constitutional guarantees. Family relationships entitled to constitutional protection are not identified by choosing "convenient [and] arbitrary" boundaries, but by reference to basic values. *Moore v. East Cleveland*, 431 U.S. 494, 502–03, 97 S.Ct. 1932, 1937, 52 L.Ed.2d 531 (1977) (constitutional protection not limited to the nuclear family) (plurality opinion). We refer, therefore, to important factors identified by the Supreme Court in attempting to refine the' concept of family relationships for constitutional purposes. *Smith v. Organization of Foster Families for Equality & Reform*, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977), focused on the existence of biological relationships and emotional attachments between family members. *Id.* at 843–44, 97 S.Ct. at 2109. *Moore, supra*, spoke of the passing on of moral and cultural values through the family. 431 U.S. at 503–04, 97 S.Ct. at 1937. Each of these elements is present in the relationship between parent and child, whether or not the parent is the parent having full or primary custody.[3] The influence of and attachment to the custodial parent may well be greater, but the relationship between the child and the non-custodial parent cannot be regarded as ephemeral and undeserving of constitutional recognition. It follows that visitation rights are entitled to due process protection, at least when the challenged governmental interference is of a serious, continuing nature. *Wise v. Bravo*, 666 F.2d 1328, 1338 (10th Cir. 1981) (Seymour, J., concurring). As previously noted, 522 F.Supp. at 781 n. 4, the courts are just beginning to deal with this precise issue, which was first raised in *Leonhard v. Mitchell*, 473 F.2d 709 (2d Cir.), cert. denied, 412 U.S. 949, 93 S.Ct. 3011, 37 L.Ed.2d 1002 (1973). Although the question is by no means settled, Judge Seymour's concurring opinion most nearly reflects this Court's view of the current state of the law. Under this theory, a violation of constitutional rights occurs when government officials deprive a parent of visitation rights permanently or indefinitely, absent sufficient excuse (such as a military draft) or some arrangement for effective redress.

Even if we were not persuaded that due process protection extended to visitation rights, we could not dismiss plaintiff's constitutional claims. This is because the State Circuit Court awarded her full custody of Mike as of July 24, 1979. The federal defendants maintain that they were not sufficiently involved in Ruffalo's *retention* of Mike to violate constitutional guarantees, but the extent of their involvement has not been fully set forth so as to authorize summary judgment.[4]

Federal defendants' final contention with respect to plaintiff's constitutional claims is that sovereign immunity bars their presentation. To the extent that damages are sought against the institutional defendants, the point is well taken. *Leonhard v. United States*, 633 F.2d 599, 618 n. 27 (2d Cir. 1980), cert. denied, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981). Injunctive relief against the institutional defendants is not barred, however. 5 U.S.C. § 702.[5]

---

3. Further, unlike the situation described in *Smith*, the emotional attachments do not "have their origins in an arrangement in which the State has been a partner from the outset." 431 U.S. at 845, 97 S.Ct. at 2110.

4. The Court is aware that the First Circuit has recently held that there is no violation of a creditor's constitutional rights when the Government effectively deprives the creditor of its remedies by taking the debtor into the Witness Protection Program. *Melo-Tone Vending,*

*Inc. v. United States*, 666 F.2d 687 (1st Cir. 1981). This case may be distinguishable due to the special constitutional status of family rights. In addition, *Melo-Tone* was decided as a case involving the just compensation clause of the Fifth Amendment.

5. Section 702 has been held to act as a waiver of sovereign immunity as to suits seeking non-monetary relief. *See, e.g. Sea-Land Service, Inc. v. Alaska R.R.*, 659 F.2d 243 (D.C.Cir. 1981); *Beller v. Middendorf*, 632 F.2d 788 (9th

■ Damages may be sought against the individual defendants, subject to a defense of qualified, good faith immunity. *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). This standard does not prevent the grant of summary judgment in "[i]nsubstantial lawsuits" that do not state "a compensable claim for relief under the Federal Constitution" *id.* at 507, 98 S.Ct. at 2911, but, as we have concluded above, the facts asserted in the complaint do state a constitutional claim. The record is insufficient to determine all of the federal defendants' actions or to analyze their state of mind as required by *Economou*. Summary judgment must therefore be denied as to the individual federal defendants on the constitutional claims.

### Federal Tort Claims Act

For the argument that the defendants violated Missouri state law, plaintiff relies primarily on § 565.150 RSMo, which provides:

> A person commits the crime of interference with custody if, knowing that he has no legal right to do so, he takes or entices from lawful custody any person entrusted by order of a court to the custody of another person or institution.

and on § 700 of the Second Restatement of Torts, which provides:

> One who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has been left [with] him, is subject to liability to the parent.

*See Kipper v. Vokolek*, 546 S.W.2d 521 (Mo. App.1977).

■ The federal defendants maintain that the state law claims are barred by the provision of the FTCA holding the act inapplicable to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government ...." 28 U.S.C. 2680(a). The exception is not applicable in this case. It applies to planning and policy decisions, not to torts committed in the operational phases of executing a government program. *See Driscoll v. United States*, 525 F.2d 136, 139 (9th Cir. 1975). Defendants argue that the statute creating the Witness Protection Program "was a broad grant of authority to the Attorney General." We agree. In this case, however, plaintiff is not challenging the existence of the program or the manner in which it was designed. Rather, she is challenging an alleged tort committed during the implementation of the program. Such a claim is not barred. *Bergmann v. United States*, 526 F.Supp. 443, 450 (E.D. Mo.1981).

■ Another exception from the coverage of the FTCA does bar one of plaintiff's claims. Plaintiffs' complaint states a claim for false imprisonment. Section 2680(h) bars actions for certain specified torts, including false imprisonment. This claim must, therefore, be dismissed.[6]

### Freedom of Information Act

Plaintiff seeks access to certain records that defendants have refused to provide. In her February 9, 1981 suggestions, plaintiff indicates that she is abandoning her requests numbered 1, 4 and 5. The remaining requests seek documents relating to Mike's current mental and physical condition and educational arrangements, the relocation of Ruffalo and Mike, and the identity of Marshals Service personnel involved in that relocation. Defendants object to

---

Cir. 1980), *cert. denied*, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981); *Sheehan v. Army and Air Force Exchange*, 619 F.2d 1132 (5th Cir. 1980), *cert. granted*, —— U.S. ——, 102 S.Ct. 88, 70 L.Ed.2d 81 (1981). *But see Estate of Watson v. Blumenthal*, 586 F.2d 925 (2d Cir. 1978).

6. By their terms, § 565.150 and § 700 appear to apply only to parents entitled to full custody. Because the Court is not convinced that plaintiff was the primary custodial parent when Mike was transported from Kansas City, the validity of plaintiff's tort claims prior to July of 1979 may be doubted. However, in the absence of supporting authority by the parties we do not decide this issue at this time.

the release of any of the records sought, relying on the personal privacy and interference with law enforcement proceedings exceptions to the FOIA. The affidavit of Howard Safir, which accompanied the motion to dismiss, avers that none of the records are severable or can be released without revealing information that would jeopardize the program and the safety of Ruffalo and Marshals Service personnel.

 We agree that release of some of the information sought would likely interfere with the operation of the Witness Protection Program and thereby be protected from release by exemption 7 of the FOIA. Other information, however, such as that relating to Mike's current health and educational arrangements, would not appear to be exempt from disclosure except to the extent that the documents containing the information might indicate his present location. Furthermore, an affidavit making the general assertion that all of the information sought is undisclosable is normally not sufficient to defeat a FOIA claim. *See, e.g.*, *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974); *Jenks v. United States Secret Service*, 517 F.Supp. 307, 310 (S.D.Ohio 1981). Accordingly, summary judgment on the FOIA claim must be denied.[7]

### Administrative Procedure Act

 Defendants maintain that 5 U.S.C. § 701(a)(2), the "committed to agency discretion" exception, prevents review of agency action in this case. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) emphasized that this is an extremely narrow exception, "applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Id.* at 410, 91 S.Ct. at 820 (*quoting* S.Rep.No.752, 79th Cong., 1st Sess. 26 (1945)). We assume, for the sake of argument, that this description precludes

review of the exercise of discretion in the Attorney General's selection and retention of those who wish to participate in the Witness Protection Program, as defendants contend, because no law describes the criteria for Witness Protection Program selection sufficiently to be applied by a reviewing court. *Doe v. Civiletti*, 635 F.2d 88, 89 (2d Cir. 1980). It does not follow that there is no law to apply in a case such as this, in which an uninvolved individual is alleged to have been *wrongfully included* in the program. As we have indicated earlier in this opinion, provisions of both federal and state law do provide a standard for reviewing this action. Summary judgment must therefore be denied as to the Administrative Procedure Act claim.

### Civiletti and Hall

 Defendants Civiletti and Hall contend that they should be dismissed due to lack of personal jurisdiction, improper venue, insufficiency of process, and insufficiency of service of process. The immediate question in issue is whether these defenses were waived because they were not presented in the original motion to dismiss but added by seeking leave to amend the motion to dismiss. We do not believe that waiver takes place when leave to amend is sought promptly and before ruling on the original motion. *Bechtel v. Liberty National Bank*, 534 F.2d 1335, 1341 n. 8 (9th Cir. 1976); *Sunrise Toyota, Ltd. v. Toyota Motor Co.*, 55 F.R.D. 519, 528 n. 4 (S.D.N.Y. 1972). Accordingly, these defendants will be granted leave to amend the motion to dismiss to assert the defenses enumerated above.

Thus far, the parties have briefed only the waiver issue and have not addressed the merits of the proffered defenses. Ruling on these issues will therefore be reserved at this time. Defendants Civiletti and Hall are directed to file suggestions in support of this aspect of the motion to dismiss within twenty days of the date of this order.

---

7. Because the FOIA dispute is not unlike discovery disputes that frequently arise in this Court, we will advise the parties, as we advise

parties involved in those disputes, to attempt to resolve the FOIA claims in good faith without further Court intervention.

*Plaintiffs' Motion for Partial
Summary Judgment*

 We now address plaintiffs' motion for partial summary judgment, which seeks, by way of injunctive relief, the return of Mike. Resolution of this motion as to Ruffalo (who is and has been openly violating the Circuit Court order) requires that we confront the question whether this Court lacks subject matter jurisdiction to grant injunctive relief against him due to the domestic relations exception to federal jurisdiction.[8] The domestic relations exception has its origin and broadest explication in dictum in the case of *In re Burrus*, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 1500 (1890). In that case, Justice Miller stated that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States."

The scope of the exception as stated by *Burrus* has been modified by two developments in the intervening years. The first of these is the increasing influence of constitutional guarantees in matters of family life. *See, e.g., Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). *See generally Developments in the Law—The Constitution and the Family*, 93 Harv.L.Rev. 1156 (1980). The second factor has been the tendency of the courts to refine the exception by inquiring whether accepting jurisdiction of a particular claim would interfere with the policies underlying the exception. *See, e.g., Jagiella v. Jagiella*, 647 F.2d 561, 565 (5th Cir. 1981); *Cole v. Cole*, 633 F.2d 1083 (4th Cir. 1980). These policies include:

the strong state interest in domestic relations matters, the competence of state courts in settling family disputes, the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts.

*Crouch v. Crouch*, 566 F.2d 486, 487 (5th Cir. 1978). We apply the doctrine to the facts of this case, mindful that the results and reasoning of the cases in this area cannot be fully harmonized, *Gill v. Gill*, 412 F.Supp. 1153, 1156 (E.D.Pa.1976), and that federal courts "should be extremely wary of becoming general arbiters of any domestic relations imbroglio." *Overman v. United States*, 563 F.2d 1287, 1292 (8th Cir. 1977).

Federal courts have entertained tort suits seeking damages from ex-spouses for interference with rightful custody, *Fenslage v. Dawkins*, 629 F.2d 1107 (5th Cir. 1980); *Kajtazi v. Kajtazi*, 488 F.Supp. 15 (E.D.N.Y. 1978), and the maintenance of such a suit involving the past violation of custody rights that have been "definitively determined" by a State Court during the relevant time period was recently upheld by the Fourth Circuit against a domestic relations exception defense. *Wasserman v. Wasserman*, 671 F.2d 832 (4th Cir. 1982). It might be thought that *Wasserman* could be extended to allow a Federal court to grant injunctive relief, consistent with existing State Court orders, in a custody case in federal court. But the Fourth Circuit rather carefully avoided sanctioning any order requiring an "adjustment of family status", a "declaration of present or *future rights*"

---

**8.** Plaintiffs assert their federal law claims against Ruffalo as well as against the federal defendants on the ground that Ruffalo is a federal agent. We do not believe that Ruffalo was transformed into a government actor by virtue of his acting as a witness for the government and entering the Witness Protection Program. *Cf. Bennett v. Pasic*, 545 F.2d 1260, 1263–64 (10th Cir. 1976) (witnesses do not act under color of state law). The other claims brought against Ruffalo are the Missouri law tort claims based on § 565.150 RSMo and § 700 Restatement 2d of Torts. The existence of diversity jurisdiction is problematic, in that

Ruffalo's citizenship is unknown, and is merely presumed by all parties to be outside the State of Missouri. Whether the $10,000 jurisdictional amount is in controversy in a visitation or custody case has also been severely questioned. *Hernstadt v. Hernstadt*, 373 F.2d 316, 318 (2d Cir. 1967). In the present case, however, damages exceeding $10,000 are sought, and we cannot say that it appears "to a legal certainty" that plaintiff's claim is "really for less than the jurisdictional amount." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938).

(emphasis added), or Federal action respecting "a custody decree still subject to review and modification". The distinction between damages and injunctive relief in interstate custody cases is an important one. Damage claims do not involve the federal courts in serving as an enforcement arm of the state courts or in modifying state custody orders. Plaintiff cites no authority allowing a federal court to perform these functions, and there are cases that appear to support the contrary proposition. *Sutter. v. Pitts*, 639 F.2d 842 (1st Cir. 1981); *Gargallo v. Gargallo*, 472 F.2d 1219 (6th Cir. 1973), *cert. denied and appeal dismissed*, 414 U.S. 805, 94 S.Ct. 77, 38 L.Ed.2d 41 (1973); *Nouse v. Nouse*, 450 F.Supp. 97 (D.Md.1978).[9] We hold therefore, that plaintiffs' motion for partial summary judgment as to Ruffalo must be denied.[10]

Injunctive relief must also be denied as to the federal defendants. There has been no showing that the defendants currently have any actual control over Mike or any right to control him. Plaintiff contends that Mike is in federal custody by virtue of his involvement in the Witness Protection Program. *Beard v. Mitchell*, 604 F.2d 485 (7th Cir. 1979), indicated that whether a Program participant is considered in custody should be determined by the context, i.e. by whether the participant's absence for the purpose in issue is "attributable to a restriction imposed by the federal marshal." *Id.* at 504. In this case, the federal defendants maintain that it is Ruffalo who is preventing Mike's return to plaintiff. The federal defendants deny they are restricting Mike's return. This is plausible. In the absence of evidence to the contrary, we are unable to rule at this time that Mike is in federal

custody or that the federal defendants control his actions.

For the reasons stated above and for good cause shown, it is hereby

ORDERED that defendants' motion to dismiss is granted with respect to plaintiffs' claim for damages for constitutional violations against defendants Department of Justice and United States Marshals Service, granted with respect to plaintiffs' claim for damages for false imprisonment against defendant United States, and denied in all other respects.

ORDERED that defendants Civiletti and Hall be granted leave to amend the motion to dismiss to assert the defense of lack of personal jurisdiction, improper venue, insufficiency of process, and insufficiency of service of process.

ORDERED that defendants Civiletti and Hall file suggestions in support of the aforementioned defenses within twenty days from the date of this order.

ORDERED that plaintiffs' motion for partial summary judgment is denied.

ORDERED that the federal defendants file their answer within twenty days of the date of this order.

ORDERED that the parties confer and, within thirty days from the date of this order, submit a proposed schedule for the prompt completion of discovery.[11]

---

9. Many of the cases on this subject are arguably distinguishable in that they create the potential for State-Federal inconsistencies, in an area of the law in which State rules are peculiarly controlling, whereas this complaint seeks to have the Court enter orders consistent with the State court orders. But the domestic relations exception does not appear to be so limited. It is, moreover, quite possible to conceive that this Court's order to Ruffalo to return Mike to plaintiff would not reflect what a Missouri Court would actually do at the present time. *See* note 1, *supra.*

10. In order to expedite processing of this portion of the case, which fairly requires prompt answers, the Court notes that today's denial of summary judgment has the effect of denying injunctive relief, as to Ruffalo and the federal defendants, *infra*, and may thus be appealed. 28 U.S.C. § 1292(a)(1).

11. The Court will consider, however, a joint application for stay if an appeal is to be filed by plaintiff Donna Ruffalo.