**Lee W. BROWN and Ursel Bartley, on Behalf of Lottie C. Brown, Petitioners,**

v.

**Garland R. BROWN and Brenda Ferguson, Respondents.**

Civ. No. F 82–130.

United States District Court,
N. D. Indiana,
Fort Wayne Division.

June 22, 1982.

William E. Harris, Torborg, Miller, Moss & Harris, Jerrald A. Crowell, Bowman &

Crowell, Otto Bonahoom, Bonahoom, Chapman, McNellis & Michaels, Fort Wayne, Ind., for petitioners.

Robert J. Parrish, George Kowalczyk and John Kowalczyk, Fort Wayne, Ind., for respondents.

## ORDER

LEE, District Judge.

This matter is before the Court on a Petition for Writ of Habeas Corpus pursuant to Title 28 of the United States Code, § 2241 *et seq.* After a May 4, 1982 pretrial conference, respondents on May 21, 1982 filed a Motion for Summary Judgment. On June 4, 1982 petitioners filed a Brief in Opposition to Summary Judgment and further sought oral arguments, which was followed on June 9, 1982 by respondents' Reply Brief in Support of their Motion for Summary Judgment. Because this Court finds that it lacks jurisdiction in this matter, summary judgment is denied as is the request for oral arguments and this cause is dismissed pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure.

The relevant facts as gleaned from the record and briefs before this Court are as follows.

### Factual Background and Procedural Posture

A petition for habeas corpus was filed on April 23, 1982 by Lee W. Brown and Ursel Bartley "on behalf of" Lottie Brown. Lee W. Brown and Ursel Bartley, son and daughter respectively of Lottie Brown, filed this action in an effort to "free" their "ailing eighty-five year old" mother from the "imprisonment" of Apartment 1205, Three Rivers North, Fort Wayne, Indiana. The petition alleges that Lottie Brown is being restrained by another of her sons, Garland Brown, with the assistance of one Brenda Ferguson. Such restraint, the petition alleges, violates Lottie Brown's constitutional rights including, *inter alia,* her right to travel, her right to associate with individuals of her own choosing and her right to liberty as defined by the United States Con-

stitution. Further, petitioners allege that they have been unable to meet with their mother and, being concerned with her health and well-being, seek habeas relief so that Lottie Brown may appear in this Court and make her desires known.

The record further indicates that litigation amongst this family has been going on for over two years in the Allen Circuit Court, State of Indiana. Portions of the results of the state court proceedings are presently on appeal to the Indiana Court of Appeals. However, it has been pointedly observed by counsel for both parties that the constitutional claims asserted in the habeas petition before this Court have not been raised or addressed in the state court.

### Application of Law

As the foregoing factual overview suggests, this Court is presented with an unusual petition for habeas corpus. Initially, it should be noted that there are a multitude of factors presented in the petition which individually counsel against federal jurisdiction and which taken together present an absolute bar to this Court's adjudication of the merits. These factors include the questionable standing of the petitioners; a lack of exhaustion of available state remedies; and the domestic relations nature of the subject matter. Each of these problems will be considered in turn.

### Standing

As a basis for standing to submit this habeas petition, petitioners rely upon the language of 28 U.S.C. § 2242. In pertinent part, this section provides that a habeas petition "shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. § 2242. The body of case law which has developed around this section indicates that "next of friend" status will be available "only when the application or writ establishes some reason or explanation satisfactory to the Court showing: (1) why the person detained did not sign and verify the petition and (2) the relationship and interest of the 'next friend.'" *Weber v. Garza,* 570 F.2d 511, 513 (5th Cir. 1978).

*Accord Wilson v. Dixon,* 256 F.2d 536 (9th Cir. 1958); *Collins v. Traeger,* 27 F.2d 842 (9th Cir. 1928). The underlying purpose for satisfying the Court of the interest of the petitioners is to prevent the "Great Writ" from being "availed of as a matter of course by intruders or uninvited meddlers, styling themselves 'next friends.'" *United States ex rel. Bryant v. Houston,* 273 F. 915, 917 (2nd Cir. 1921). Thus, "next of friend" petitions may only be filed under certain circumstances including situations where the person detained is unable "to understand the English language or the situation, particularly in the case of aliens, impossibility of access to the person or mental incapacity . . ." *United States ex rel. Bryant v. Houston, supra,* at 918.

■ As noted at the outset, the present habeas petition has been filed on "behalf of" Lottie Brown by two of her children asserting "next of friend" status. To satisfy the requirement for such status, petitioners allege that their mother is elderly and privately imprisoned and it is their overall concern for her health and well-being which serves as the impetus for seeking her release via habeas corpus. Yet, interestingly enough, the petition is directed against her other son and one might surmise that he too would harbor the same feelings. Even were this assumption unfounded, Mrs. Brown has a duly appointed legal guardian. By report, her guardian, Donald Doxsee, states that he has been in contact with his ward and that she is well cared for and that it is not her desire to see either Lee or Ursel.[1] Taken in total, it appears that the real party in interest in this suit [2] is Lottie Brown's guardian, Donald Doxsee. However, for purpose of further analysis, this Court will entertain the present petition brought on behalf of Mrs. Brown by her "next of friends" Lee Brown and Ursel Bartley.

*Exhaustion of State Remedies*

Fatal to the present petition is a lack of exhaustion of state remedies. Counsel for petitioners vigorously assert that there is no need to exhaust *any* state remedies. The argument rests upon three misconceptions. First, counsel argues that because this is not a suit brought by a state prisoner under 28 U.S.C. § 2254,[3] there is no need to exhaust remedies. Second and alternatively, it is asserted that because there is no *pending* state court matter, this Court need not abstain from deciding the merits of the petition for habeas corpus. Third and finally, counsel asserts that even if exhaustion is deemed a necessary prerequisite to entertaining this petition, the exceptional circumstances which form the nucleus for the writ make it of such character as to avoid the need for exhaustion.

Initially, this Court recognizes that the Supreme Court has not yet specifically addressed the need for exhaustion of state remedies when a petition for habeas corpus is filed on behalf of a private party.[4] Yet,

1. *Report of Visit with Ward,* Cause No. 79–1238, Allen Circuit Court, May 11, 1982 (attached as Exhibit C to Respondents' Brief in Support of Motion for Summary Judgment, Cause No. F 82–0130, docket at 11).

2. Under Rule 17 of the Federal Rules of Civil Procedure, the "real party in interest" would, of course, include guardian Donald Doxsee. 17(a), F.R.CIV.P. Also, in Indiana a guardian by statute has custody and control of the ward. I.C. 29–1–18–28(a) (Burns, 1973).

3. In pertinent part, 28 U.S.C. § 2254 states:
   (b) An application for a writ of habeas corpus in behalf of a person *in custody pursuant to the judgment of a State court* shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is

either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.
   (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented. (Emphasis added).

4. Just this past spring, the Supreme Court in *Rose v. Lundy,* —— U.S. ——, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), determined that exhaustion is a requirement in "mixed petitions" for habeas corpus relief for state prisoners thereby resolving a split among the Circuit Courts of Appeals.

the underlying concerns for comity, judicial economy and due deference to state proceedings are analogous and suggest the need for exhaustion of state remedies. As succinctly stated by the Sixth Circuit Court of Appeals:

> Just as administration of the criminal justice system is recognized to be a matter of considerable local concern, so domestic relations is an area of predominantly local interest. Thus, even if a legitimate constitutional claim is presented, the potential disruption of pending proceedings and the ensuing friction in our federal system provide good reasons for deferring to state proceedings and declining federal jurisdiction.[5]

*Huynh Thi Anh v. Levi*, 586 F.2d 625 (6th Cir. 1978); *see also Doe v. Doe*, 660 F.2d 101, 106 n. 5 (4th Cir. 1981); *Ruffalo v. Civiletti*, 522 F.Supp. 778, 780 (W.D.Mo. 1981). The foregoing quote suggests the need for exhaustion of state remedies in cases like the one presently under review. To allow collateral attacks on pending state proceedings only ensures furtherance of controversy while detracting from the integrity of a dual court system.

In the present context, petitioners have not exhausted their available state remedies. In fact, petitions are presently pending in Cause No. CC–79–1238 in the Allen Circuit Court regarding the visitation rights of petitioners with their mother and a portion of an earlier order is presently being appealed to the Indiana Court of Appeals.

It is urged, however, that even though petitions are presently pending in the state court, these petitions are tangential to the present dispute in that the constitutional claims are being raised in the first instance by the present habeas petition. Because the constitutional issues are being raised *de novo* in this Court, petitioners argue that any need for exhaustion is inapplicable. This circuitous argument is unfounded and

further suggests the need for abstention on the part of this Court.

■ As a general proposition, abstention by a federal court is appropriate where there is a similar action pending in a state court or if "the plaintiffs had an *opportunity* to present their federal claims in the state proceedings." *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 2378, 60 L.Ed.2d 994 (1979) (emphasis in original), *citing Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (1977). The opportunity for raising issues in the first instance is readily apparent when there is both a similarity of issues and an adequate remedy available for the litigants. *See generally* 17 Wright, Miller & Cooper, Federal Practice & Procedure § 4247.

In the present petition, there is no explanation as to the reasons for petitioners' failure to raise the constitutional claim in the state court. Certainly, Indiana courts are competent to address and decide constitutional issues. Moreover, Indiana has a habeas corpus statute[6] which could, conceivably, provide the relief sought in the present petition. Failure to utilize such available channels, while suggestive of "forum shopping," indicates that petitioner "has deliberately bypassed the orderly procedure of the state court." *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963). In consideration of federalism, "constitutional issues, if any, should properly be presented first in state court ..." *Scott v. United States*, 475 F.Supp. 20, 23 (W.D.Tenn.1979). Even if petitioners are precluded from now asserting their constitutional challenges in state court, this Court is reluctant to entertain this petition because at the time of the institution of suit in state court such constitutional claims were available and, indeed, readily apparent.

---

5. The latter portion of this decision will discuss the domestic relations issues as they appear in this case.

6. I.C. 34–1–57–25 (Burns, 1982), provides:

Writs of habeas corpus shall be granted in favor of parents, guardians, and spouses; and to enforce the rights and for the protection of infants and insane persons; and the proceedings shall, in all such cases, conform to the provisions of this chapter.

The procedural facts in the present case closely parallel those presented to the Ninth Circuit Court of Appeals in *Tree Top v. Smith*, where the Court disposed of the habeas petition in the following manner:

The crux of Tree Top's petition relates to the merits of the custody dispute, and she had full and fair opportunity to litigate those issues in the state court. Moreover, she had the statutory right to appeal the decree in the Idaho system. Under the circumstances, she is now bound by the state judgment and the federal courts will not entertain her complaint merely because she has reframed the custody dispute as a petition for habeas corpus.

577 F.2d 519, 521 (9th Cir. 1978). Thus even though available state remedies were exhausted, the Ninth Circuit followed the trend of federal courts when faced with a habeas petition which presents new issues to the district court and dismissed the matter.

As a final argument regarding the exhaustion of state remedies, or the lack thereof, petitioners contend that even though it may have been prudent to argue constitutional deprivations in the state court, their claim should be excepted due to the exceptional circumstances presented by the present petition. Thus, it is contended that exceptional circumstance and inadequate state remedies[7] mandate an exception to the doctrine of exhaustion.

As a framework for analysis, petitioners maintain that the test for "exceptional circumstances"[8] is founded upon the decision in *Ex Parte Hawk*, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572 (1944), and requires a "particular urgency." In defining "particular urgency" the Supreme Court in *Ex Parte Hawk*, cited to *United States v. Tyler*, 46, 269 U.S. 13 S.Ct. 1, 70 L.Ed. 138 (1925), as precedent for this term. In essence *Tyler* suggests "the due and orderly administration of justice in a state court is not to be ... interfered with save in rare cases where exceptional circumstances of peculiar urgency are shown to exist."[9]

■ The exceptional circumstances urged by petitioners in the present matter rests upon Mrs. Brown's present physical condition. Because Mrs. Brown is eighty-five years old, diabetic and suffering from high blood pressure, petitioners maintain that it is essential that the Court entertain the request for habeas corpus relief. However, these contentions hardly rise to the level of "urgency" espoused by the Supreme Court in *Ex Parte Hawk* and *Tyler*. Moreover, if

7. The "inadequacy" of state remedies is not readily apparent. Aside from a brief reiteration of the language in the habeas statute regarding inadequate remedies, there is no real discussion of this matter. Since this bare assertion is not enlarged upon, this Court is left with the impression that the adequacy of state remedies is not at issue.

8. Petitioners' argument seems to have gone full circle. While initially arguing that § 2254 does not apply because there is no state custody, they now rely on this section for arguing that exceptional circumstances exist.

9. "Exceptional circumstances of peculiar urgency" are set forth in *Tyler* as follows:

This general rule is emphasized by a consideration of the few cases where this court has upheld the allowance of the writ. They were all cases of exceptional urgency. Such, for example, were *In re Neagle*, 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55, where a deputy marshal of the United States was discharged on habeas corpus from state custody on a charge of homicide committed in the performance of his duty to guard and protect a justice of this court; *In re Loney*, 134 U.S. 372, 10 S.Ct. 584, 33 L.Ed. 949, where petitioner, charged with perjury in testimony given in a contested congressional election case, was discharged upon the ground that to permit him to be prosecuted in the state courts would greatly impede and embarrass the administration of justice in a national tribunal; and *Wildenhus' Case*, 120 U.S. 1, 7 S.Ct. 385, 30 L.Ed. 565, where a member of the crew of a foreign merchant vessel was discharged from the custody of the state because the arrest was contrary to the provisions of an international treaty. Thus, it will be seen, two of these cases involved interferences by the state authorities with the operations of departments of the general government, and the other concerned the delicate relations of that government with a foreign nation.

46 S.Ct. 3 (1925).

"Lottie Brown is running out of time" [10] as petitioners contend, it seems logical that the constitutional issues would have been raised at the earliest opportunity. To neglect to raise such issues in the state court and then argue an emergency in this Court seems incongruous. Presumably, her deteriorating health did not occur immediately before filing in this Court and hence form the impetus for seeking habeas corpus relief. Rather, it appears that these "exceptional circumstances" have existed throughout the course of the litigation in both state and federal court.

*Domestic Relations Subject Matter Jurisdiction*

■ The domestic relations exception to subject matter jurisdiction in federal courts is deeply rooted and stems from the belief that domestic relations matters, being of local concern, are best left to the jurisdictional province of state courts. *See e.g., Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979); *Ohio ex rel. Popovici v. Agler*, 280 U.S. 379, 50 S.Ct. 154, 74 L.Ed. 489 (1930); *Barber v. Barber*, 62 U.S. 582, 16 L.Ed. 226 (1858); *Crouch v. Crouch*, 566 F.2d 486 (5th Cir. 1978); *Wilkins v. Rogers*, 581 F.2d 399 (4th Cir. 1978); *and generally*, 13 Wright, Miller & Cooper, Federal Practice and Procedure § 3609 (1975). While the preceding cases deal principally with cases involving suits over divorce and child custody, the broad language of the courts indicate the applicability of abstention in cases involving general domestic relations issues. Thus, "the whole subject of the domestic relations of a husband and wife, parent and child, belongs to the laws of the state and not to the laws of the United States." *Ex Parte Burrus*, 136 U.S. 586, 10 S.Ct. 850, 853, 34 L.Ed. 1500 (1890). In short, it is the "long-standing policy of the federal courts to refrain from interfering in state domestic relations disputes." *Tree Top v. Smith*, 577 F.2d 519, 521 (9th Cir. 1978).

In the present context, the issue revolves around the visitation and custody of Lottie Brown. While constitutional rights of freedom of association have been raised, it appears that petitioners have "reframed the custody dispute as a petition for habeas corpus." *Tree Top, supra*, at 521. The record indicates that Lottie Brown's guardian, Donald Doxsee, has brought custody and visitation matters to the attention of the Allen Circuit Court, and in fact, that court has issued an order regarding Mrs. Brown's custody and visitation claims.[11] Such action indicates that guardianship issues have been addressed by the state court and further indicate that these issues remain at the forefront of petitioners' claims.

This Court's conclusion that it lacks subject matter jurisdiction is bolstered further by the trend of decisions in the Circuit Courts of Appeals in the analogous area of child custody. Six circuits have addressed the use of habeas petitions in child custody cases and the overwhelming weight of authority counsels against federal court jurisdiction in such cases. *See Doe v. Doe*, 660 P.2d 101 (4th Cir. 1981); *Lehman v. Lycoming Co. Children's Service Agency*, 648 F.2d 135 (3rd Cir. 1981); *Huynh Thi Anh v. Levi*, 586 F.2d 625 (6th Cir. 1978); *Sylvander v. New England Home for Little Wanderers*, 584 F.2d 1103 (1st Cir. 1978); *Tree Top v. Smith*, 577 F.2d 519 (9th Cir. 1978); *contra Davis v. Page*, 640 F.2d 599 (5th Cir. 1981). A common thread in these decisions is that the custody disputes generally involve the mother's right to raise her children and only incidentally the right of the child, the party in custody. *See Sylander, supra ; Lehman, supra*. In such cases, "[r]eason and precedent both dictate ... that the federal courts not intervene. The policy that the federal courts not entertain the case is so strong that any exercise of jurisdiction by the district court would amount to an exer-

---

**10.** Petitioners' Brief Supporting Denial of Summary Judgment, Cause No. F 82–130, June 4, 1982 at 6.

**11.** Entry of April 6, 1981, Allen Circuit Court, Cause No. CC–79–1238; Exhibit C and D of Respondents' Brief in Support of Motion for Summary Judgment, May 21, 1982 (Record at 11).

cise of power it does not possess." *Doe v. Doe, supra,* at 106.[12]

The analogy between the child custody cases and the present case is readily apparent. There as here, the disputes revolve around visitation and custody rights. While constitutional claims [13] are presently being asserted, forebearance to litigate these issues in state court indicate to some extent that Lottie Brown's constitutional rights are tangential to the effort on behalf of her two children to visit with her. At the forefront of the state court proceedings was the right of access—the right of visitation—and these were addressed by the state court. As such, this Court will not review such determinations, being convinced that the present proceeding is a domestic relations matter with as much local concern and interest as divorce and child custody disputes. Thus, this Court "must rely on a judge in a court of family law—with its more flexible standards and with the parties before him and their latest circumstances in mind—to balance the equities and seek compromises that best accommodate the interests of the parties." *Huynh Thi Anh v. Levi,* 586 F.2d 625, 634 (9th Cir. 1978).

### Conclusion

On the basis of the aforementioned findings and conclusions, this Court holds that it lacks subject matter jurisdiction in this cause because available state remedies have not been exhausted and because the subject matter is not one over which this Court has jurisdiction. Under Rule 12(h)(3) of the Federal Rules of Civil Procedure, this action must be dismissed and may not be disposed of by summary judgment. *Solomon v. Solomon,* 516 F.2d 1018, 1027 (3rd Cir. 1975); *Jones v. Brush,* 143 F.2d 733, 735 (9th Cir. 1944).

Accordingly, summary judgment is DENIED as is the request for oral arguments, and this case is DISMISSED.

---

**12.** The Fourth Circuit's decision in *Doe v. Doe* is particularly enlightening in regard to both its overview of various holdings in the federal courts in child custody matters and in its analysis of the efforts to which litigants will go in an attempt to assert their "rights." In this regard, consider the following passage:

We reason ... that this is a case in which parties fighting over the right to raise a child will fight until there is no other forum in which they may do so. We also think, ... that experience and a sense of justice and fairness indicate that the federal courts are not nearly as well equipped as are local state courts to deal with the problems of child custody.

**13.** Petitioners also make an argument that jurisdiction should attach by "dint of" a federal question citing *Solomon v. Solomon.* However, this language in *Solomon* is applicable only when "jurisdiction lies by dint and review of territorial courts." *Id.,* 516 F.2d 1018 (3rd Cir. 1975). This Court having long ago lost the status of being a territorial court, and not a proper forum for review of territorial court decisions, need not address the merits of this argument. *See De La Rama v. De La Rama,* 201 U.S. 303, 26 S.Ct. 485, 50 L.Ed. 765 (1906).